33 F.3d 52
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Thomas Lee STRINGFIELD, Plaintiff-Appellant,
v.
GEORGIA-PACIFIC CORPORATION, Defendant-Appellee.
 No. 93-2007.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1994.
Decided August 16, 1994.
 
 1
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Richard L. Williams, Senior District Judge. (CA-92-838)
 
 
 2
 Argued: Gerald Glenn Poindexter, Poindexter & Poindexter, Surry, VA, for appellant.
 
 
 3
 Argued: Michael Peter Oates, Hunton & Williams, Richmond, VA. On brief: Thomas J. Flaherty, Hunton & Williams, Richmond, VA, for appellee.
 
 
 4
 E.D.Va.
 
 
 5
 AFFIRMED.
 
 
 6
 Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 PER CURIAM
 
 7
 Thomas Lee Stringfield ("Stringfield") brought this suit in the United States District Court for the Eastern District of Virginia seeking to recover from Defendant Georgia-Pacific Corporation ("Georgia-Pacific") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq. and 42 U.S.C. Sec. 1981, for his demotion from a salaried supervisory position to an hourly position at Georgia-Pacific's sawmill in Wakefield, Virginia ("the Wakefield Mill"). Only the Title VII claim survived to trial. The trial judge, after a bench trial, issued Findings of Fact and Conclusions of Law, ruling for Georgia-Pacific.
 
 
 8
 Stringfield appeals from the trial court's decision. He asserts that the trial court erred in its finding that Stringfield failed to prove his Title VII claim. Stringfield also argues that the trial court erred in: (1)excluding evidence of the racial composition of the Wakefield Mill's workforce and of other race-based employment practices allegedly engaged in by Georgia-Pacific; (2) admitting evidence related to the qualifications necessary to fill the position for which Georgia-Pacific chose another employee over Stringfield, which choice resulted in Stringfield's demotion; and (3) acknowledging, in its Findings of Fact, the result of an EEOC investigation that was not offered in evidence. For the following reasons, we affirm.
 
 A. FACTS
 
 9
 In August of 1978, the Planer Mill Supervisor at the Wakefield Mill retired. At the retiring supervisor's suggestion, Walter Holdsworth ("Holdsworth"), the Plant Superintendent at all relevant times, promoted Stringfield from his hourly-paid laborer position, at which he had been working for five years previous, to the position of Planer Mill Supervisor. As Planer Mill Supervisor, Stringfield was responsible for the dressing, packaging and loading of finished lumber. In 1985, Georgia-Pacific acquired the Wakefield Mill.
 
 
 10
 In June of 1990, Georgia-Pacific instituted a company-wide system of annual written evaluations for salaried employees. Of the seven salaried employees evaluated, all but Stringfield received "outstanding" overall ratings. Stringfield, the only black production supervisor, received an "adequate" overall rating.
 
 
 11
 In January of 1991, Georgia-Pacific decided to close down the Wakefield Mill temporarily, due to economic conditions. During the shutdown, five of the seven salaried employees were assigned to supervisory positions in other mills owned by Georgia-Pacific. The other two, including Stringfield, were posted as security guards at the Wakefield Mill.
 
 
 12
 One of the five salaried employees assigned to work at other Georgia-Pacific mills was Merrill Carr ("Carr"), a young white male employee who had previously been promoted, following a brief probationary period as an hourly employee, to the salaried position of Quality Control Supervisor. In that position, Carr was responsible for monitoring the equipment and personnel involved in each step of the production process. Carr was also given the additional responsibilities of Environmental Compliance Coordinator and Assistant Kiln Supervisor. During the shutdown, Carr first worked at Georgia-Pacific's mill in Creedmoor, North Carolina, where he performed quality control functions and assumed the duties of the Planer Mill Supervisor. After six to eight weeks at the Creedmoor Mill, Carr was sent to the McKenney Mill to fill the recently vacated Planer Mill Supervisor there. In both locations, Carr was hailed as an exceptional performer. In fact, the Plant Managers of the Creedmoor and McKenney Mills were so pleased with Carr's performance that each offered Carr the Planer Mill Supervisor position at his mill. Carr declined both offers.
 
 
 13
 On one evening shortly after the shutdown, Holdsworth stopped to check on the Wakefield Mill. Holdsworth found Stringfield, the security guard on duty, apparently intoxicated. After some coaxing, Stringfield allowed Holdsworth to drive him home. Holdsworth, while taking no disciplinary action against Stringfield for his behavior, placed a note in Stringfield's file to record the incident.
 
 
 14
 In May of 1991, Georgia-Pacific decided to reopen the Wakefield Mill, but with a reduced salaried and hourly workforce. Initially, Holdsworth was ordered to eliminate two salaried positions and to cut the hourly ranks. However, Holdsworth was able to prevail on his superiors to cut only one salaried employee. Holdsworth decided the cut would be from the production side. Holdsworth also decided, in the interest of efficiency, to combine the two salaried positions of Planer Mill Supervisor, then held by Stringfield, and Quality Control Supervisor, then held by Carr, into a single position, to be filled by Carr. Holdsworth's asserted reason for choosing Carr over Stringfield was Carr's demonstrated ability to perform both the quality control and planer mill duties encompassed in the newly-created position. Stringfield's experience, on the other hand, was limited to the planer mill.
 
 
 15
 While he was authorized to lay off Stringfield, Holdsworth decided not to do so, allegedly in recognition of Stringfield's long service and valuable planer mill experience. Rather, Holdsworth decided to create an hourly position in the planer mill for Stringfield as a Leadman. As a Planer Mill Leadman, Stringfield continued to perform essentially all of his former duties, except that he now reported to Carr, for whom he filled in when Carr was absent. In addition, Stringfield's rate of pay was lower than Carr's.
 
 
 16
 After cutting the hourly workforce by twelve (nine whites and three blacks), on June 5, 1991, Georgia-Pacific reopened the Wakefield Mill with a total workforce of forty-two employees, eight salaried and thirty-four hourly. On that date, Stringfield was informed of his demotion. Approximately eighteen months later, Stringfield filed a complaint in district court, claiming his demotion was racially-motivated.
 
 B. THE MERITS OF THE CLAIM
 
 17
 The trial court found that Stringfield failed to establish a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Specifically, Judge Williams concluded that because Stringfield could not show that he was as qualified as Carr for the newly-created Quality Control/Planer Mill Supervisor position, he failed to set forth a prima facie case. Stringfield v. Georgia-Pacific Corp., No. 3:92CV838, slip op. at 8 (E.D. Va. July 6, 1993) (hereinafter "Slip Op."). In addition to this finding, the trial court also concluded: "Georgia-Pacific's down-sizing of its work-force was a legitimate business decision. Further, there is no evidence on the record that the decision to merge the quality control with the planer mill supervisor positions ... was taken for race-related reasons." Id. Accordingly, the trial court entered judgment in favor of Georgia-Pacific. Id. at 9.
 
 
 18
 Stringfield contends that the trial court erroneously concluded that he failed to establish a prima facie case, and that "the evidence offered by the employer to justify its demotion of [Stringfield] was a mere pretext to make unlawful consideration of race." Br. of Appellant at 34. While Stringfield would like the Court to engage in an examination of the intricacies of the McDonnell Douglas proof scheme, the Court need not dissect the trial court's application of McDonnell Douglas in order to resolve Stringfield's appeal. As Judge Wilkinson recently noted:
 
 
 19
 The [McDonnell Douglas ] proof scheme ... is designed to give judges " 'a method of organizing evidence and assigning the burdens of production and persuasion in a discrimination case.' " Smith v. University of N.C., 632 F.2d 316, 334 (4th Cir.1980) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir.1979)). Courts must, however, resist the temptation to become so entwined in the intricacies of the proof scheme that they forget that the scheme exists solely to facilitate determination of "the ultimate question of discrimination vel non (citations omitted)".... [T]he ... resolution of this question need not be derailed by strict fealty to proof schemes.
 
 
 20
 Proud v. Stone, 945 F.2d 796, 798 (4th Cir.1991).
 
 
 21
 It is clear from the trial court's opinion that the court answered the "ultimate question" in favor of Georgia-Pacific. Specifically, the trial court found that Georgia Pacific's asserted reason for demoting Stringfield, namely the down-sizing of the Wakefield Mill workforce and the resultant decision to consolidate the two positions and to give Carr that position, was legitimate and not racially motivated. This finding is a factual one, and will not be reversed unless clearly erroneous. See Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985); Gairola v. Com. of Va. Dep't of Gen'l Services, 753 F.2d 1281, 1288 (4th Cir.1985).
 
 
 22
 In applying the clearly erroneous standard, the Court is mindful of the principle that if there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous, even if the appellate court, had it been sitting as the trier of fact, would have seen the evidence differently. Riddick v. School Board, 784 F.2d 521, 533 (4th Cir.), cert. denied, 479 U.S. 938 (1986). Thus, in a case such as this one, in which conflicting testimony and evidence is presented, any permissible reading of the facts by the district court will be upheld. Moreover, when determining whether the trial court's findings are clearly erroneous, an appellate court must view the evidence in a light most favorable to the appellee. Ente Nazionale Per L'Energia Electtrica v. Baliwag Nav., Inc., 774 F.2d 648, 654 (4th Cir.1985). Under this standard, and given the evidence before the trial court, this Court cannot find the trial judge's determination that Stringfield failed to prove that his demotion was the product of unlawful discrimination to be clearly erroneous. Accordingly, this Court cannot reverse the district court's finding.
 
 C. EVIDENTIARY ISSUES
 1. Race-Based Employment Practices
 
 23
 Stringfield claims that the trial court "improperly excluded from its consideration" evidence of Georgia-Pacific's other discriminatory employment practices. Br. of Appellant at 27. However, it is undisputed that the trial judge admitted all of the evidence concerning other alleged discriminatory practices. Thus, while Stringfield characterizes his argument as an evidentiary one, he is really challenging the trial court's determination that such evidence is not persuasive on the issue of Georgia-Pacific's motive in demoting Stringfield. Since the record on this issue supports the trial judge's assessment of Stringfield's evidence regarding Georgia-Pacific's other alleged discriminatory practices, it cannot be reversed.
 
 
 24
 2. Racial Composition of Georgia-Pacific's Workforce
 
 
 25
 Stringfield argues on appeal that evidence of disparity in the racial composition of the Wakefield Mill's salaried and hourly workforce is probative of Georgia-Pacific's discriminatory motive in demoting him. Stringfield claims that "the District Court erroneously concluded that it could not consider certain evidence related to the racial composition of the employer's workforce." Br. of Appellant at 2.
 
 
 26
 It is undisputed that the evidence regarding the racial composition of Georgia-Pacific's workforce was admitted at trial. In its conclusions of law, however, the district court found that
 
 
 27
 [a]lthough "gross statistical disparities ... alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination," (footnote omitted) because this is not a disparate impact claim, the Court cannot draw any inference from the statistical distribution of Georgia-Pacific's employees.
 
 
 28
 Slip Op. at 8. Even if the district court erred in deciding that it could not consider Stringfield's statistical evidence, such an error would by no means require reversal. In short, Stringfield could not prevail on the basis of his statistical evidence.
 
 
 29
 Stringfield contends that the segregation of the hourly workforce among the various departments in the Mill as well as the predominately white salaried workforce (as compared with the predominately black hourly workforce) is evidence of the racial motivation behind his demotion. This "statistical data," however, even if it were to be accepted as true, is not probative of anything material. "[I]n order to prove a prima facie case, the complainant[ ] must compare the racial composition of the jobs in question and the racial composition of the qualified population in the relevant labor pool." Mallory v. Booth Refrigeration Supply Co., Inc., 882 F.2d 908, 912 (4th Cir.1989). Stringfield offered no evidence regarding which hourly employees might be qualified for which salaried jobs. Moreover, Stringfield offered no persuasive evidence regarding the promotional opportunities which allegedly had been denied to black candidates. As a result, any statistical disparity between the hourly and salaried workforce is meaningless. The Court also does not believe that any meaningful inferences be drawn from the alleged segregation among the various departments in the Mill. Thus, the trial court's decision not to consider the statistical evidence, if erroneous at all, does not constitute reversible error.
 
 
 30
 3. Admission of Evidence Related to Qualifications Necessary to Fill the Position for Which Georgia-Pacific Chose Carr Over Stringfield
 
 
 31
 Stringfield contends that the district court erred in permitting Georgia-Pacific to place in evidence testimony and exhibits related to the duties of Quality Control Supervisor. In the Fourth Circuit, evidentiary rulings are reviewed on an abuse of discretion standard. See Persinger v. Norfolk & Western Ry. Co., 920 F.2d 1185, 1187 (4th Cir.1990). This Court cannot find error in the admission of this evidence.
 
 
 32
 It is hardly an abuse of discretion to admit evidence in a Title VII case that is clearly relevant, if not to a plaintiff's prima facie case, then to the defendant's asserted reason for taking the adverse employment action at issue. It is Georgia-Pacific's contention that having made the business decision to consolidate the Quality Control and Planer Mill Supervisor positions, it chose Carr to fill that position (and demoted Stringfield) because Carr had the necessary qualifications. Evidence regarding the duties of Quality Control Supervisor, which were subsumed in the new consolidated position, is thus relevant to the determination of whether Stringfield or Carr was more qualified for the new position. Stringfield's objection to the admission of the evidence must therefore be rejected.
 
 
 33
 4. The Acknowledgement of the EEOC Determination
 
 
 34
 Included in the Findings of Fact appended to its Final Order, the district court noted, in laying out the procedural history of the case that
 
 
 35
 [i]n December 1991, Stringfield filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Georgia-Pacific had demoted him as a result of his race. The EEOC ruled that Stringfield had not proven race discrimination, either directly or through circumstantial evidence.
 
 
 36
 Slip Op. at 6. Other than in this paragraph, the district court did not mention the EEOC determination in its Findings of Fact, Conclusions of Law or Final Order. Nonetheless, Stringfield contends that by acknowledging the EEOC determination, the district court committed prejudicial error, because neither party offered it in evidence at trial.
 
 
 37
 It is undisputed that the EEOC's reasonable cause determination was never admitted in evidence at trial.* It appears that the trial judge included a reference to it in his Findings of Fact solely to set out the procedural history of the case.
 
 
 38
 Even if this Court were to assume that the trial court erred in "admitting" the result of the EEOC determination, such error does not require reversal. In short, there is no indication that the trial judge relied on the EEOC determination in reaching his decision. In view of the complete absence of anything tending to show that the result of the EEOC's investigation induced the district court to make an essential finding which he would not otherwise have made, reversal would be neither required nor appropriate, even if the evidence had been admitted in error. See Multi-Medical Convalescent and Nursing Center of Towson v. N.L.R.B., 550 F.2d 974, 977 (4th Cir.), cert. denied, 434 U.S. 835 (1977) ("It has long been settled (footnote omitted) that an appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which could not have otherwise have been made.")
 
 
 39
 For the foregoing reasons, the Court concludes that the trial court's factual determinations were not clearly erroneous and that the trial court made no procedural errors warranting reversal. Accordingly, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 However, the EEOC determination (although not its specifics) was mentioned in Stringfield's Complaint and several times at trial