**Devera L. FOREMANYE, Plaintiff,**

**v.**

**BOARD OF COMMUNITY COLLEGE TRUSTEES FOR BALTIMORE COUNTY, Defendant.**

**Civil No. H–95–143.**

United States District Court, D. Maryland.

March 20, 1996.

Erroll D. Brown, Landover, MD, for plaintiff.

Linda T. Cox, Asst. County Atty., Towson, MD, for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Plaintiff Devera L. Foremanye ("Foremanye"), a black female, is a former employee of Essex Community College ("the College"). Plaintiff was terminated from her position at the College on December 4, 1991, and she has now filed a complaint in this Court alleging that she was subjected to employment discrimination because of her medical disability and because of her race.[1]

In her complaint, plaintiff has alleged that administrators at the College failed to reasonably accommodate her disability in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq. She describes her disability as "handicapped due to cardiac condition." Plaintiff has further alleged that defendant terminated her employment because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, et seq.

Presently pending before the Court are (1) defendant's motion for summary judgment, (2) plaintiff's motion "to continue defendant's motion for summary judgment until after further depositions have been taken," filed pursuant to Rule 56(f), F.R.Civ.P., and (3) defendant's motion to strike plaintiff's motion to continue defendant's motion for summary judgment. The parties have submitted memoranda, exhibits and affidavits in support of and in opposition to the pending motions. The Court is satisfied that no hearing is necessary. See Local Rule 105.6. For the reasons to be stated herein, the Court has concluded that plaintiff's motion for further discovery must be denied, that defendant's motion to judgment must be granted. Accordingly, judgment will be entered in alleged that defendant terminated her employment because of her favor of defendant.

## I

### Background Facts

The relevant facts, taken in the light most favorable to plaintiff, are as follows.[2] On December 3, 1990, plaintiff was hired on a temporary basis by defendant as an Assessment Coordinator at the College. Plaintiff's duties included placing students in appropriate courses and appraising student applicants. This was a full time position and required a 37.5 hour work week. However, plaintiff was hired on a temporary basis, and her contract of employment was to terminate automatically on June 30, 1991.

At the time she was hired, plaintiff informed defendant that she suffered from a cardiac disability and that "stress may cause [a] need for periodic reduction in work hours." At the outset of her employment, no immediate problems arose, and plaintiff initially performed her job satisfactorily. Her contract was later renewed, again on a temporary basis, for an additional year.

Some time in late August of 1991, plaintiff began experiencing medical problems, allegedly related to the stress of her job. Except for a few days, she was not able to work during the entire period from mid-August of 1991 until the end of September. During this period, plaintiff's illness was variously described as mitral valve prolapse leaflet syndrome, irritable bowel syndrome, and chronic Epstein Barr Syndrome. As of September 24, plaintiff's physician restricted her to a 30 hour work week for a period of two

1. Plaintiff filed an earlier suit in this Court naming the College as the defendant. Foremanye v. Essex Community College, Civil No. H–93–4216. The Court dismissed that action without prejudice because plaintiff had not yet received a right-to-sue letter from the Equal Employment Opportunity Commission (the "EEOC"). The Court also concluded that the College has no independent legal existence and that defendant Board of Community College Trustees for Baltimore County ("the Board") is the legal entity subject to suit in this case. Memorandum Opin-

ion dated July 20, 1994. It is that entity which has now been sued in this civil action.

2. There are disputed issues of fact in this case. Because plaintiff is the non-movant here, the facts summarized below, where disputed, reflect plaintiff's version of the events to the extent that it is supported by affidavits, depositions or other documentary evidence. Magnuson v. Peak Tech. Servs., Inc., 808 F.Supp. 500, 504 (E.D.Va.1992).

months.[3] Even under this reduced work schedule, however, plaintiff often arrived late for work, departed early, or was absent.

On October 10, 1991, Barbara Tower, the Assistant Dean of Instruction at the College, sent a memorandum to plaintiff inquiring as to when plaintiff would be returning to work full time, and asking for a response by October 18. Plaintiff failed to respond to this inquiry. On October 17, plaintiff filed a charge of discrimination with the Maryland Commission on Human Relations (the "MCHR") and with the EEOC.

Shortly thereafter, on October 24, 1991, plaintiff was involved in an incident regarding new furniture for her office. Plant Operations personnel were not at the time available to remove her old furniture. Plaintiff's supervisor, Donna McKusick, had offered to assist plaintiff, but plaintiff instead interrupted a student who was completing an entrance examination and requested that the student remove the old furniture. McKusick immediately sent a memorandum to Dr. Andrew Snope, the Dean of Instruction for the College, and to Assistant Dean Tower complaining of plaintiff's excessive absences and her inappropriate workplace behavior. McKusick recommended that plaintiff's employment be terminated immediately. In a subsequent reply to McKusick, plaintiff suggested that she had been asked to move her own furniture because of her race, and that it was "disrespectful" of McKusick to fail to consider plaintiff's cardiac disability.[4]

By letter dated October 30, 1991, Dean Snope instructed plaintiff that she must either return to work full time or follow appropriate college procedures for requesting a reduced work schedule. Plaintiff was asked to reply by November 6.[5] However, plaintiff did not receive the letter until November 14,

when she forwarded it to her attorney. Neither plaintiff nor her attorney directly responded to Dean Snope's letter. Rather, on November 15, plaintiff requested a flexible work schedule whereby she would not begin working until 10 a.m. or later and whereby she would continue to work merely 30 hours per week.

Dean Snope, in a letter to plaintiff dated November 21, noted that the two month period of reduced hours prescribed by plaintiff's physician was to end on November 24. That letter indicated that, given plaintiff's failure to cooperate with College authorities during her illness, plaintiff would be suspended without pay for five days as of November 25. The letter further stated that plaintiff's employment would be terminated on December 4 unless she met with Dean Snope during the period of her suspension in order to discuss her employment problems. No such meeting was ever held, and plaintiff's employment was subsequently terminated on December 4, 1991.

On August 2, 1993, the MCHR entered a finding of no probable cause to believe that plaintiff had been discriminated against on the basis of her race or her disability. The EEOC, before reaching a decision on plaintiff's charge, issued plaintiff a right-to-sue letter on October 14, 1994. This civil action was thereafter timely filed in this Court on January 17, 1995.[6]

## II

### Plaintiff's Motion to Continue Defendant's Motion for Summary Judgment

In the motion she has filed, plaintiff complains that, on the final day for the completion of discovery prescribed by the Court's Scheduling Order, counsel for defendant sent

---

3. Plaintiff merely presented the physician's note to her supervisor, but did not formally request a reduced schedule through the College administration.

4. Plaintiff apparently did not write this memorandum until December 4.

5. Apparently, Dean Snope and plaintiff had previously arranged a meeting for November 1. Dean Snope, however, refused to conduct the meeting in the presence of plaintiff's attorney.

6. In an earlier motion to dismiss or for summary judgment, defendant contended (1) that it was entitled to the defense of sovereign immunity, (2) that this suit was barred by limitations and (3) that plaintiff had failed to name the proper respondent in her administrative charge. That motion was denied by Memorandum and Order dated July 20, 1995.

to plaintiff by fax a letter identifying five "new" persons possessing knowledge relevant to this case. These persons were past or present co-workers and supervisors of plaintiff. By her motion, plaintiff seeks to take the depositions of these persons in order to prepare an adequate opposition to defendant's motion for summary judgment. *See* Rule 56(f), F.R.Civ.P.

However, counsel for plaintiff has now indicated that the parties have agreed that no further discovery is necessary for supplementation by either side of the record now before the Court. Both sides are satisfied with the adequacy of the memoranda and exhibits which they have submitted in support of and in opposition to the pending motion for summary judgment. Accordingly, plaintiff's motion to continue will be denied as moot.[7]

## III

### *Summary Judgment Principles*

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir. 1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. Rule 56(e). If the nonmoving party "fail [s] to make a sufficient show-

ing on an essential element of her case with respect to which she has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 323, 322, 106 S.Ct. at 2552.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by a plaintiff that the defendant may be liable under the claims alleged, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15; *Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding

---

7. Defendant has filed a motion to strike plaintiff's motion to continue pursuant to Rule 12(f), F.R.Civ.P. That rule grants to the Court discretion to strike redundant, immaterial, impertinent, or scandalous matter "from any pleading."

Plaintiff's motion, however, is not a pleading as defined in Rule 7(a), F.R.Civ.P. Moreover, plaintiff's motion to continue is being denied as moot. Accordingly, defendant's motion to strike will also be denied.

to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53).

Applying these standards to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted.

## IV

*Alleged Discrimination Based on Disability*

■ Plaintiff alleges that the College terminated her employment in violation of the ADA, which provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). In order to establish a violation of the ADA, plaintiff must prove (1) that she has a "disability," (2) that she was "qualified" for her job, and (3) that defendant's termination of her employment constituted an unlawful "discrimination" based on her disability. *See Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 212 (4th Cir.1994).

■ The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of an individual. 42 U.S.C. § 12102(2)(A). Plaintiff asserts that her physical impairments include a cardiac condition (mitral valve prolapse leaflet syndrome), irritable bowel syndrome, and chronic Epstein Barr Syndrome. Plaintiff has presented evidence that these ailments are brought on by stress, and that they limit the hours during which she is able to work. Accepting these facts as true, the Court is satisfied that plaintiff has established that she has a "disability" within the meaning of the ADA.

However, on the record here, the Court has concluded as a matter of law that plaintiff was not "qualified" for her job, as that term is used in the ADA. Under the ADA, only persons who are "qualified" for the position in question may state a claim for discrimination. *Tyndall,* 31 F.3d at 212. A "qualified individual with a disability" is:

an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8). Plaintiff therefore has the burden of demonstrating (1) that she could perform the essential functions of her job, or (2) if not, that a reasonable accommodation by the employer would enable her to perform those functions. *Tyndall,* 31 F.3d at 213; *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

On the record here, the Court has concluded as a matter of law that plaintiff could not perform the essential functions of her temporary job at the College. The evidence further establishes that no reasonable accommodation would have enabled her to perform such essential functions. As the Fourth Circuit stated in *Tyndall,*

In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis. Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee "who does not come to work cannot perform *any* of his job functions, essential or otherwise."

31 F.3d at 213 (quoting *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn.1986), *aff'd,* 831 F.2d 298 (6th Cir.1987)). An employee who cannot meet the attendance requirements of the job at issue thus cannot be considered a "qualified" individual protected by the ADA. *Tyndall,* 31 F.3d at 213.

Evidence of record indicates that plaintiff's physical condition was aggravated by the requirements of her employment. Consequently, she often was absent from work, she arrived late, and she departed early. Following the onset of her serious physical problems in August of 1991, plaintiff used all of her paid personal illness leave. Defendant thereafter allowed her to take additional unpaid leave. Eventually, plaintiff's doctor concluded that, even with flexible hours, plaintiff would be able to work only 30 hours per week, rather than the 37.5 hours required for her position. Because of her physical condition, plaintiff thus required a 20% reduction

in the hours that she would be working for defendant.

On the record here, the Court is satisfied as a matter of law that plaintiff could not perform the essential functions of her job even with her requested accommodation. This is not a case in which an employee has been merely infrequently absent or has required only minimal modifications in her work schedule. In addition to taking 18 days of paid personal illness leave from August 19 to September 12, 1991, plaintiff here was absent some 15 full days and 36 partial days from September 13 to November 22. The accommodation which she sought from the College required a 7.5 hour reduction in her weekly hours, which was equivalent to being absent for one full day each week.

The hourly requirement of 37.5 hours per week was clearly essential for the adequate performance of the duties required of a person occupying the position of Assessment Coordinator. A certain amount of stress was inherent in the performance of those duties by an employee occupying the position. This stress, however, caused severe physical problems to plaintiff and prevented her from fulfilling her employment responsibilities. Because plaintiff could not reasonably meet the hourly requirements of her job, this Court concludes that she cannot be considered "qualified" for that job.

Furthermore, any additional reasonable accommodation would not have remedied the situation. Defendant had allowed plaintiff to miss a large number of days and to work flexible hours. However, it is apparent that plaintiff's disability would not permit her to work more than 30 hours per week. It would be unreasonable as a matter of law if the Court were to require that defendant accommodate this substantially reduced schedule. No other manner of accommodating plaintiff's disability would appear to be feasible. Indeed, the stress associated with the position of Assessment Coordinator was unavoidable and could not be accommodated. Accordingly, the Court concludes that plaintiff cannot sustain her burden of establishing that a reasonable accommodation by defendant would have enabled her to perform the essential functions of her job. *See Tyndall,* 31 F.3d at 213.

Thus, even if plaintiff could establish that she was "qualified" for her position, her ADA claim must nonetheless fail because as a matter of law she cannot on this record establish that defendant discriminated against her in any way. Under the ADA, the term "discriminate" includes denying employment opportunities to an employee who is an otherwise qualified individual with a disability if such denial is based on the need of the employer to make reasonable accommodation to the employee. 42 U.S.C. § 12112(b)(5)(B). As discussed hereinabove, there were no means by which defendant could reasonably accommodate plaintiff's disability. Therefore, defendant as a matter of law did not terminate plaintiff "based on the need ... to make reasonable accommodation." *Tyndall,* 31 F.3d at 214.

Moreover, there is a powerful inference of nondiscrimination when the same person both hires and fires the employee. *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir. 1991). In the present case, Donna McKusick recommended that plaintiff be hired in 1990 and then later recommended that plaintiff be fired in October of 1991. The "strong presumption of nondiscrimination" under these circumstances provides further support for the Court's conclusion that plaintiff cannot establish that her termination was motivated by discriminatory animus. *Tyndall,* 31 F.3d at 215. On the record here, the Court has concluded that plaintiff was terminated because her excessive absences made it impossible for her to satisfactorily perform her job. Plaintiff was not terminated because defendant did not reasonably accommodate her disability.

For the reasons stated, the Court is satisfied that there are no genuine issues of material fact with respect to the claim asserted by plaintiff in this case under the ADA and that defendant is entitled to judgment as a matter of law on that claim. Accordingly, defendant's motion for summary judgment as to plaintiff's claim asserted under the ADA will be granted.

## V

### *Alleged Discrimination Based on Race*

■ Defendant also is entitled to summary judgment as to plaintiff's claim of racial discrimination asserted under Title VII. As discussed hereinabove, defendant has presented substantial evidence that plaintiff was fired because she could not adequately perform her job.

Although plaintiff argues that she was fired because of her race, she has failed to produce evidence that defendant acted with a discriminatory animus. Plaintiff has done little more than rely on conclusory assertions and vague references to the fact that she is black and that many of the administrators at Essex Community College are white. A plaintiff's own conclusory assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate, nondiscriminatory reasons for an adverse employment action. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989); *Gairola v. Commonwealth of Va. Dept. of General Servs.,* 753 F.2d 1281, 1288 (4th Cir.1985). Thus, no factual support has been supplied by plaintiff for her claims that she was subjected to unfair discipline because of her race, or that race contributed to the incident involving her new office furniture. The Court has therefore concluded that plaintiff's evidence is insufficient as a matter of law to carry her ultimate burden of proving intentional discrimination based on race. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). As noted hereinabove, plaintiff was hired and fired by the same person, thereby creating a strong presumption of nondiscrimination. *See Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991).

Because there exist no genuine issues of material fact as to plaintiff's claim of racial discrimination asserted under Title VII, defendant is entitled to judgment as a matter of law on that claim. Accordingly, defendant's motion for summary judgment as to plaintiff's claim of racial discrimination will also be granted.

## VI

### *Conclusion*

For all the reasons stated herein, the Court will grant summary judgment in favor of defendant as to both of plaintiff's claims. Plaintiff's motion to continue defendant's motion for summary judgment will be denied as moot, and defendant's motion to strike will also be denied. An appropriate Order will be entered by the Court.