**Warren A. PROUD, Plaintiff–Appellant,**

v.

**Michael P.W. STONE, Secretary of the Army, Defendant–Appellee.**

No. 90–2443.

United States Court of Appeals, Fourth Circuit.

Argued July 10, 1991.

Decided Sept. 23, 1991.

Michael Jeffrey Kator, Kator, Scott & Heller, Washington, D.C., argued (Irving Kator, Jennifer R. Levin, on brief), for plaintiff-appellant.

Coleman Ray Sachs, Sp. Asst., U.S. Atty., Alexandria, Va., argued (Henry E. Hudson, U.S. Atty., Dennis Szybala, Asst. U.S. Atty., on brief), for defendant-appellee.

Before WILKINSON, WILKINS and NIEMEYER, Circuit Judges.

OPINION

WILKINSON, Circuit Judge:

This case presents the recurrent situation in which a former employee alleges that the same individual who hired him discharged him only several months later for discriminatory reasons. Because the plaintiff has failed to overcome the significant burden that such a plaintiff faces in making out a claim of discriminatory discharge, we affirm the judgment of the district court dismissing the action.

I.

Plaintiff Warren A. Proud submitted to the Department of the Army in 1984 an application for employment that included his date of birth. This application was forwarded to Robert W. Klauss, the Central Accounting Officer in charge of the Army's Central Accounting Division (CAD) in Ludwigsburg, Germany. Klauss considered seven applicants, including petitioner, for the position of Chief Accountant of the CAD, a grade UA–9 position. In making his selection, Klauss prepared a chart comparing the applicants which included a column noting the age of each. At that time, Proud was 68 years old, and the other six applicants were 63, 62, 56, 37, and 28 years of age, respectively. Judging Proud to be the most qualified for the position in terms of background, education, and experience, Klauss hired him as Chief Accountant.

Proud began his job on June 14, 1985. In late June of 1985, Jan Coriarty, an Accounting Technician in the CAD, resigned her position, and Proud agreed to temporarily assume her responsibilities for handling five funds for which CAD provided accounting services. Because Klauss became dissatisfied with Proud's handling of these funds, Klauss conducted counselling sessions with Proud on August 28, 1985,

and September 11, 1985, to apprise Proud of the problems with his performance. At the second session, Klauss warned Proud that adverse action would be taken if there was not improvement within thirty days.

Detecting no improvement in Proud's performance, Klauss requested on October 16, 1985, that Proud be discharged. In his request, Klauss noted that Proud "failed to meet suspense dates"; "failed to follow directions"; "prepared documents that are shoddy, inaccurate and incomplete"; and "performed at a level below what is considered professional." The discharge became effective on October 28, 1985. Proud's position as Chief Accountant was not filled until April 23, 1987, when 32–year–old Kelly Marsden was promoted.

Proud filed suit in the United States District Court for the District of Columbia in July 1987, alleging that his dismissal violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a. Upon the Army's motion, the case was transferred to the United States District Court for the Eastern District of Virginia. At the close of plaintiff's evidence at trial, the district court granted the Army's motion for dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Proud now urges this court to reverse that ruling.

## II.

Proud offers an extended litany of contentions as to why his dismissal resulted from age discrimination. This lengthy list includes, *inter alia*, the following: he was never assigned the duties for which he was hired, so he could not have failed to meet his employer's legitimate expectations; he was replaced by an Accounting Technician and a Chief Accountant younger than he; due to inadequate training, he required a minimum of four months to reach a level of proficiency in performance of his assigned duties; he had difficulty in acquiring necessary data, thereby justifiably delaying his submission of reports past stated deadlines; some of the information submitted to him for inclusion in his reports was erroneous; the use of white-out and pencil in the preparation of his work, for which he was criticized, is considered standard accounting practice; there were no written procedures for him to follow; even though "lining out" of numbers in documents is a practice in conformity with applicable Army regulations, he was criticized for doing it; and similarly situated, younger employees who committed the same infractions had not been terminated.

In order to decide this case, we need not engage in a point-by-point rebuttal of each of plaintiff's manifold contentions. Instead, we examine the district court's ruling in light of the essential prerequisites for any plaintiff's recovery in an ADEA action. Any ADEA plaintiff must make the elementary showings that he is a member of the protected group and that he has suffered unfavorable employment action taken by an employer covered by the Act. *Fink v. Western Elec. Co.*, 708 F.2d 909, 914 (4th Cir.1983). As the additional key requirement, a plaintiff must prove that age was "a determining factor" in the employer's decision to take the adverse action. *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1417 (4th Cir.1991).

In assessing whether Proud established that age was a motivating factor for his discharge, we focus on the undisputed fact that the individual who fired Proud is the same individual who hired him less than six months earlier with full knowledge of his age. One is quickly drawn to the realization that "[c]laims that employer animus exists in termination but not in hiring seem irrational." From the standpoint of the putative discriminator, "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." Donohue & Siegelman, *The Changing Nature of Employment Discrimination Litigation*, 43 Stan.L.Rev. 983, 1017 (1991). Therefore, in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.

While we can imagine egregious facts from which a discharge in this context could still be proven to have been discriminatory, it is likely that the compelling nature of the inference arising from facts such as these will make cases involving this situation amenable to resolution at an early stage. Here Klauss was responsible for the hiring and firing of Proud within a six-month time frame, and the evidence of his enumerated job deficiencies in a supervisory position makes any inference of discriminatory animus unwarranted.

Our analysis of this issue in no way conflicts with the scheme of proof for Title VII cases set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and adapted for use in ADEA cases by this court. *See, e.g., Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234–35 (4th Cir.1991); *Duke*, 928 F.2d at 1417. The proof scheme set out in those cases is designed to give judges " 'a method of organizing evidence and assigning the burdens of production and persuasion in a discrimination case.' " *Smith v. University of N.C.*, 632 F.2d 316, 334 (4th Cir.1980) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1016 (1st Cir.1979)). Courts must, however, resist the temptation to become so entwined in the intricacies of the proof scheme that they forget that the scheme exists solely to facilitate determination of "the ultimate question of discrimination *vel non*." *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *see also Nelson v. Green Ford, Inc.*, 788 F.2d 205, 208 (4th Cir.1986). When the hirer and firer are the same individual, there is a powerful inference relating to the "ultimate question" that discrimination did not motivate the employer, and the early resolution of this question need not be derailed by strict fealty to proof schemes.

While the proof scheme is not necessary to resolution of the issue of discrimination *vel non* on these facts, the effect of the inference created by these facts is just as strong when the proof scheme is used. The proof scheme involves three steps. First, the ADEA plaintiff must make out a prima facie case of discriminatory discharge. Once plaintiff has done that, defendant bears the burden to articulate a legitimate, nondiscriminatory reason for the action taken. If defendant meets that burden, plaintiff then has the burden to show that the proffered reason was pretextual. *Conkwright*, 933 F.2d at 234–35.

The relevance of the fact that the employee was hired and fired by the same person within a relatively short time span comes at the third stage of the analysis. To reiterate in only slightly different terms what has previously been discussed, this fact creates a strong inference that the employer's stated reason for acting against the employee is not pretextual. The plaintiff still has the opportunity to present countervailing evidence of pretext, but in most cases involving this situation, such evidence will not be forthcoming. In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing.

Our holding advances the aims of the statute. For almost any employer, there will be cases where an individual hired for a position does not meet the employer's expectations and a termination ensues. If former employees in these situations bring ADEA claims that are allowed to proceed to trial, employers may fear that a costly suit is possible even when there are completely legitimate reasons for a discharge. When this is coupled with the fact that individuals are far more likely to bring suits for discriminatory discharge than for discriminatory failure to hire, there is a grave risk that employers who otherwise would have no bias against older workers will now refuse to hire them in order to avoid meritless but costly ADEA actions. *See* Donohue & Siegelman, *supra*, at 1024. Courts must promptly dismiss such insubstantial claims in order to prevent the statute from becoming a cure that worsens the malady of age discrimination.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.