**Jimmie R. TYNDALL, Plaintiff,**

v.

**DYNARIC, INC., Defendant.**

**No. Civ.A. 2:97CV675.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 23, 1998.

Scott M. Reed, Scott M. Reed, P.C., Virginia Beach, VA, for Plaintiff.

Scott W. Kezman, Kaufman & Canoles, P.C., Norfolk, VA, for Defendant.

## OPINION AND ORDER

PRINCE, United States Magistrate Judge.

This matter came before the Court on defendant's Motion for Summary Judgment. On October 1, 1997, the parties consented to have the case proceed before a United States Magistrate Judge. The Court heard oral argument on the Motion on February 12, 1998.

### Nature of the Case

This is a civil action under Title VII of the Civil Rights Act of 1964, by Jimmie R. Tyndall ("Tyndall"), a production supervisor employed by the defendant, Dynaric, Inc. ("Dynaric") alleging racial discrimination in employment. Plaintiff continues to pursue only two of the original four Counts from his complaint.[1] The remaining claims allege that Tyndall was discriminated against on the basis of race because he receives less compensation than a similarly situated white employee (Count 1), and because he did not receive a 1995 promotion to a Production Manager position, which was instead given to a non-minority applicant (Count 2).

### Material Facts

Plaintiff is an African–American male who has been employed by defendant since 1976 in its "Strapping Division," producing plastic strapping packaging material. (Tyndall Dep. 6–8.) Since 1976, he has been promoted several times. (*Id.* at 9.) His current position

---

1. Plaintiff states in his Brief in Opposition to this motion that he is longer pursuing any claims under Count 3 or Count 4 of the Complaint.

at Dynaric is as a Production Supervisor. (*Id.*) There are four Production Supervisors at Dynaric in the Strapping Division, each of whom report to the Production Manager. (Long Dep. 5.) In turn, the Production Manager reports to Jim Nelson, Dynaric's Vice President of Manufacturing. (Exhibit B,[2] Nelson Dep. 40.) The Production Manager position recently became vacant in the summer of 1995. (Tyndall Dep. 17.)

Dynaric advertised the available Production Manager position in local newspapers for several months, and Nelson periodically briefed the Production Supervisors, including Tyndall, on the status of the search for a new Production Manager. (Tyndall Dep. 20, Nelson Dep. 29, 33–34, Long Dep. 38.) Plaintiff knew the Production Manager position was open the entire time Nelson sought to fill it. (*Id.* at 17.) Tyndall acknowledges he never applied for the open position. (*Id.*)

Plaintiff states that over time, he made it generally known that he was interested in making progress or advancing in the Company. (Tyndall Dep. 17, Aff. ¶ 3.) Dynaric filled the Production Manager position in March 1996, by hiring Mike Lafferty, a white male. (Exhibit F, Lafferty Aff. ¶ 1–4.) Lafferty had responded to the Company's newspaper ad for the position and had eighteen years' previous experience as a middle manager. (*Id.* ¶ 2.) None of the Production Supervisors had approached Nelson about filling the job vacancy before he hired Lafferty. (Nelson Dep. 34.)

Plaintiff admits that several months after the position had been filled, he was told that if he, or any of the other Production Supervisors, had expressed an interest in the position, they would have been considered along with the applicants who responded to the newspaper ads. (Tyndall Dep. 20.) When asked later by Lafferty why he never applied for the job, plaintiff responded that he did not want to work directly under Nelson. (Lafferty Aff. ¶ 5–6.)

Steve Long, who like plaintiff is currently a Production Supervisor, is a white/Caucasian male. Since 1986, when he was promoted to Production Manager, Long has been paid a higher wage than Tyndall. (Exhibit C.) During the period between 1985 and 1989, Long served as the Production Manager, acting during that period as plaintiff's immediate supervisor. (Long Dep. 5.) In 1989, Long returned to his Production Supervisor position. (*Id.*) When he was demoted, and returned to his Production Supervisor job, Long's salary was not decreased back to its original level. Instead, Dynaric continued his then existing salary and decreased the size of his future pay raises to theoretically gradually bring him back in line with the other Supervisors. (Nelson Dep. 57–58, Long Dep. 34–35.) Long is currently the Supervisor of a night shift, which means he now has fewer employees to supervise and less duties to undertake than does the plaintiff who supervises a day shift. (Long Dep. 6–8, Tyndall Dep. 117–118.) Plaintiff asserts that these facts sufficiently support his claim of racial discrimination in employment.

## DISCUSSION

### A. Standard of Review for Motions for Summary Judgment Under Rule 56(c)

Under Rule 56, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. *Id.*

In deciding a summary judgment motion, the court must view the record as a whole

---

**2.** Unless otherwise indicated the "Exhibits" referred to are attached to defendant's brief in support of their Motion for Summary Judgment.

and in the light most favorable to the non-moving party, Tyndall. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed.R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials negating the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

Rule 56 mandates summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

Courts must take special care in considering summary judgment in cases involving questions of motive, such as in this employment discrimination case. *Ballinger v. North Carolina Agricultural Extension Service,* 815 F.2d 1001, 1004 (4th Cir.1987), *see Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364–65 (4th Cir.1985) (*overruled on other grounds by: Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). However, "[t]he fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is never an appropriate vehicle for resolution." *Ballinger,* 815 F.2d at 1005 (citations omitted). Where a plaintiff fails to set forth either a prima facie

case of discrimination or a "genuine factual dispute over the employer's legitimate nondiscriminatory explanation," a defendant may prevail on summary judgment. *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316–17 (4th Cir.1993).

With these controlling principles in mind, the Court turns to the merits of the motion.

### B. *Unequal Pay Claim*

Count 1 of the complaint alleges that during the period between 1984 and the present, Dynaric paid the plaintiff a lower wage than that paid to Steve Long, a Caucasian/white employee. (Complaint ¶ 6–9.)[3] Tyndall alleges that Long, an employee who currently holds the same job title as plaintiff, actually has even fewer responsibilities and duties than plaintiff does, and that this variation between their salaries is unlawful. (Complaint ¶ 7.) Specifically, plaintiff alleges that this discrepancy in pay is a result of deliberate racial discriminatory practices in Violation of 42 U.S.C. § 2000(e)–2(a), (d), (h) and (m). (Complaint ¶ 8.)

A *prima facie* case of race discrimination under Title VII requires exhibiting a connection between race and the adverse employment decision. *Autry v. North Carolina Department of Human Resources,* 820 F.2d 1384, 1385 (4th Cir.1987). Plaintiff's allegation satisfies the *prima facie* case of discriminatory unequal pay because: (1) as an African-American, he belongs to a protected class, (2) he received less pay than a non-minority employee, Steve Long, and (3) the higher paid non-minority is performing a job which requires substantially equal skills, efforts, and responsibilities. *See Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336 (4th Cir.1994).

Both Tyndall and Long currently serve as Production Supervisors, and at the time this action was filed, Long earned approximately $3,225.80 per year more than the plaintiff. (Exhibit C.) Plaintiff argues that as a day-

---

**3.** In his reply brief, plaintiff alleges further evidence of discrimination is found when Tyndall's compensation is compared to that of Ms. Sanders, a white female Production Supervisor. (Reply Brief, 9.) This allegation is not made anywhere in the complaint.

Further, a review of the Wage Comparison chart reveals that any difference in the pay of Tyndall and Sanders is negligible, and does not support a reasonable inference of racial discrimination. (*See* Defendant's Reply Brief, 5.) In 1997, for example, Tyndall made $42,127,56 and Sanders made $42,512.42. (Exhibit C.)

shift Production Supervisor he oversees more employees and has more significant duties than Long (who is a night shift supervisor), and that there is no legitimate reason for his pay to be lower than Long's. Accordingly, he attributes the difference to racial animus. (Brief in opposition, 2–3; Long Dep. 6–8; Tyndall Dep. 117–118.)

In response, defendant offers a legitimate, non-discriminatory reason for the unequal treatment of the plaintiff. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 250–56, 101 S.Ct. 1089, 1092–95, 67 L.Ed.2d 207 (1981) (explaining the familiar burden shifting framework for evaluating evidence in race discrimination cases.) The employer, Dynaric, is not required to prove the absence of a discriminatory motive, but merely articulate some legitimate reason for its action. *EEOC v. Western Elec. Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir.1983). Defendant argues that Long, the higher paid employee, received significant raises when he was promoted and served for three years as Dynaric's Production Manager, between August 1985 and January 1989. (Exhibit C, Wage Comparison.) During that period, the record reflects that Long received pay increases which out-paced those of Tyndall. (*Id.*) When Long was returned (demoted) to a Production Supervisor position, his salary was not reduced. (*Id.*) Instead, he received what defendant describes as lesser salary increases, designed to narrow any pay disparity between Long and the other Production Supervisors over time. (Nelson Dep. 57–58, Long Dep. 34–35, Exhibit C.) Defendant argues that this legitimate business decision offers no hint of discriminatory motivation.

▇ Plaintiff admits in deposition that a similarly situated white co-worker who is also paid less than Long, Ms. Dorothy Sanders, could raise the same challenge to Long's higher salary. (Tyndall Dep. at 50.) When asked why then does he allege that his salary differential is based on race, plaintiff merely replies "because that's the way I see it." (*Id.*) Where employees, including both members of the protected class and non-members, are treated identically, no particular employee can claim that such treatment manifests discriminatory intent on the part of the employer. *See EEOC v. Clay Printing Co.,* 955 F.2d 936, 944 (4th Cir.1992). The plaintiff's unsupported subjective perception of discrimination, standing alone, is irrelevant. *See Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980); *Ash v. United Parcel Service, Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986).

This proffered non-discriminatory justification for the wage differential shifts the burden back to the plaintiff to demonstrate "that the proffered explanation is pretextual and that the defendant was actually motivated by discriminatory intent." *Brinkley–Obu,* 36 F.3d at 344; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. The burden of persuasion remains on the plaintiff, who may make the required showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1136 (5th Cir.1983). The employer's proffered reason is not pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). If the plaintiff fails to evidence a genuine dispute of fact over the employer's nondiscriminatory reason, he has not satisfied his burden and the defendant may prevail as a matter of law.

Here, plaintiff fails to present evidence which a reasonable fact finder could determine satisfies this burden. Plaintiff's argument on "pretext" is that because it has been nine years since Long's demotion without a pay cut, and Long's salary has still not completely leveled off with Tyndall's, an inference of discrimination is created. Plaintiff proposes that this course of conduct creates a credibility question regarding defendant's proffered explanation of the discrepancy between salaries.

▇ The Court finds this argument unpersuasive. This Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination. . . ." *Giannopoulos v. Brach & Brock*

*Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997) (quotations and citations omitted). *See also Clay Printing Co.*, 955 F.2d at 946. The fact that defendant here has, perhaps munificently, chosen not to cut a non-minority's salary following a demotion is not evidence of discrimination against a minority co-worker, in the face of this nondiscriminatory justification.

An inference of racial discrimination against Tyndall is not sustained by the fact that a fellow employee received a merit based salary increase which the employer chose to maintain over time. While Tyndall may wish that he had received a similar pay raise, he never served as Production Supervisor, and the non-discriminatory distinction between the two employees is clear and undisputed. Dynaric's strategy with respect to Long's compensation does not demonstrate racially discriminatory treatment of Tyndall. The Court need look no further than Sanders, a white/Caucasian Production Supervisor, doing essentially the same job as Tyndall and Long, whose salary also remains less than Long's, to adequately refute any potential inference that Long makes more money because he is white, or that Tyndall makes less because he is black.

The Court finds that the record supports the conclusion that Long continues to make more money than Tyndall and that they each now do substantially the same job.[4] Defendant's proffered explanation is that this variation is founded upon Long having served three years at a higher position before returning to his current position. This argument is logical, non-discriminatory, and unrebutted by all reasonable inferences which can be drawn from the record before this Court. Plaintiff's obligation to demonstrate pretext remains unsatisfied. Plaintiff's claim that he was paid a lower wage than Steve Long because "Dynaric intentionally and deliberately engaged in unlawful, discriminatory and differential employment against Plaintiff solely on account of his race ..." fails as a matter of law.

### C. *Refusal to Promote*

■ With respect to Count 2, plaintiff asserts that there exist genuine disputes of material fact which preclude the entry of summary judgment and dismissal. Namely, plaintiff asserts that he has sufficiently established the existence of a *prima facie* case of racial employment discrimination in Dynaric's decision not to promote Tyndall to Production Manager in 1995–1996. A review of the record indicates that initially, the primary issue in dispute here is whether a reasonable fact finder could conclude that Tyndall applied for the job in question.

To satisfactorily establish a *prima facie* case, plaintiff must demonstrate that: 1) he is a member of a protected group, 2) that he applied for the position in question, 3) that he was qualified for the position, and 4) that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.[5] *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir.1994); *McNairn v. Sullivan*, 929 F.2d 974 (4th Cir.1991); *Alvarado v. Bd. of Trustees of Montgomery Comm. College*, 928 F.2d 118, 121 (4th Cir.1991); *see also, Caviness v. Nucor–Yamato Steel Co.*, 105 F.3d 1216, 1223 (8th Cir.1997); *Von Zuckerstein v. Argonne Nat. Laboratory*, 984 F.2d 1467, 1472–73 (7th Cir.1993).

It is clear from the record that plaintiff never applied for this particular promotion. Plaintiff emphasizes that he had generally made known his desire to advance in the Company in 1982 or 1983, and was told that the best way to do that would be to further

---

**4.** The Court notes as an aside that Exhibit I, copies of 1996 Performance Ratings of the four Production Supervisors, indicates that Long received the highest performance ratings, and Tyndall the lowest.

**5.** A strong argument could also be made here that plaintiff does not meet this fourth element of the *prima facie* case. The circumstances here may be insufficient to create an inference of unlawful discrimination based on this failure to promote, especially in light of the fact that plain- tiff was previously promoted by this employer several times, from a "machine operator," to a "process checker," to a "machine technician," and finally a "production supervisor." (Tyndall Dep. 9–11.) However, given the benefit of all permissible inferences from the facts, this Court finds the plaintiff has met this fourth element of the *prima facie* case. Indeed, the burden of the *prima facie* case is by no means designed to be an onerous burden. *Burdine*, 450 U.S. at 248, 101 S.Ct. at 1090–91.

his education. (Tyndall Dep. 17–18.) However, plaintiff admitted in deposition that he never expressed any interest in the Production Manager position during the six months in which it was open during 1995 and early 1996. (*Id.*) Plaintiff asserts that the advice he received in 1982 or 1983 about furthering his education prevented him from expressing an interest in the promotion when it eventually became available in late 1995. (*Id.* at 18.) Following the hiring of Mr. Lafferty as Production Manager, however, plaintiff admitted to Lafferty that he had not applied for the position because he did not want to work directly for Jim Nelson. (Exhibit F, Lafferty Aff. ¶ 6.)

While acknowledging that he never applied for the position in question, plaintiff asserts that "I did make it known that I was interested in making progress in the company." (*Id.* at 17.) In his deposition, plaintiff referred only to the 1982 or 1983 conversation with Mr. Nelson as an example of his making his wish to advance at the Company known to his supervisors. (*Id.* at 16–18.) Defendant asserts that plaintiff cannot rise any higher than this limited statement identifying only one expression of a desire to advance, which occurred over ten years prior to the incident in dispute.

Dynaric argues that Tyndall's deposition testimony is materially contradicted by his subsequent affidavit, wherein Tyndall states: "Throughout my tenure with Dynaric, Inc., I have expressed my interest and desire in advancing at Dynaric. I first expressed this interest to James Nelson in 1982 or 1983. Thereafter, I would express this to my supervisors, including Don Wessing, John Trombitas and Dennis Fuller. Fuller, in fact, told me I would be his choice to succeed him." (Tyndall Aff. ¶ 3.)

■ Defendant maintains that this statement in the affidavit directly contradicts plaintiff's deposition testimony in a manner prohibited by the Fourth Circuit, and therefore should not be considered as potentially creating an issue of fact. *See Barwick v.*

*Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). Giving the non-moving party, the plaintiff, the benefit of all reasonable factual inferences, as the Court is required to do at this stage, the affidavit does not explicitly contradict the deposition testimony and is therefore properly to be considered by the Court. The deposition testimony did not foreclose the possibility that plaintiff had made his desire for advancement known to others over time, and the affidavit is therefore not necessarily "contradictory." *See Barwick*, 736 F.2d at 960. This portion of the affidavit is properly considered by the Court; however, the Court finds that the conclusion it supports is not dispositive of the instant motion. The affidavit fails to create a genuine issue of material fact.

Despite a previously expressed desire to advance, it remains uncontradicted that the plaintiff in this case did not apply for the Production Manager position when it became available in 1995. (Tyndall Dep. 17, Nelson Dep. 33–34, 76–77.) Plaintiff did not submit a resume, an application, did not respond to the advertisement offering the position, nor did he expressly demonstrate an interest in this particular position to his supervisor.[6] For six months the opportunity presented itself, and for six months the plaintiff took no affirmative action to obtain consideration for the promotion. Plaintiff even acknowledged later that he did not apply for the position because he did not want to work directly for the individual who supervised the position in question. (Lafferty Aff. ¶ 6.) The only reasonable inference to be drawn from these undisputed facts is that at the time the position was vacant, plaintiff did not seek the job.

■ The test for a *prima facie* case in a failure to promote claim requires that the plaintiff "apply" for the position at issue. *Carter*, 33 F.3d at 458; *McNairn*, 929 F.2d at 977. Case law expounding upon this particular element of the *prima facie* case is admittedly scarce. *See e.g., Caviness*, 105 F.3d at 1223. It is clear however, that a failure to apply is fatal to a claim of discrimi-

---

**6.** Defendant notes that Dynaric's Hourly Employee Handbook, which, while not binding, serves as a reference, states: "If you wish to advance at Dynaric/DYC, you should first make your super- visor aware of your interest, seek opportunities from your supervisor to demonstrate your abilities, and perform in your present job at your absolute best." (Brief in Support, App. E.)

natory refusal to promote. If an employee does not apply for a desired promotion, the employer need make no decision with respect to that employee, and there can be no actionable discriminatory motivation. *See e.g., Thompson v. Kelso,* No. 96–2224, 1997 WL 570870, at *3–4 (4th Cir. Sept.16, 1997)(per curiam) (unpublished), holding:

> The record in this case, considered in the light most favorable to [plaintiff], reveals that his application for the vacancy and his supporting credentials were not submitted to the proper decision-making authorities. Therefore, his application was neither considered nor rejected on any basis . . . . . Accordingly, we find that the district court properly dismissed [plaintiff's] claim of racially discriminatory failure to promote.

Plaintiff seeks to clear this failure to apply hurdle by alleging during his deposition that the usual practice would be that if "Dynaric sees interest in a person that they want to promote, they usually approach the person and offer the promotion." (Tyndall Dep. 16–17.) On this point, defendant asserts that none of the other Production Supervisors expressed an interest, nor were they approached about the open position, so the failure to approach Tyndall about the position could not be construed as racially discriminatory. (Nelson Dep. 33–34, Long Dep. 38–39.) In his affidavit, Tyndall disputes this contention with a hearsay assertion that fellow Production Supervisor Steve Long told him that he had been approached by Nelson regarding the Production Manager job, and had declined the offer. (Tyndall Aff. ¶ 4.) While this hearsay statement may be relevant to impeach the credibility of Nelson and Long, it does not alter the more fundamental fact that Tyndall never applied for the position, and is therefore inconsequential in this analysis.

This Court finds, as a matter of law, that a generally expressed interest in "advancing" in employment, falls well short of the second element of a *prima facie* case of employment discrimination for failure to promote, which requires that the employee "apply" for the position. *See generally Carter,* 33 F.3d at 458; *McNairn,* 929 F.2d at 977. To hold otherwise would be to endorse the proposition that once an employee has expressed an interest in promotion or advancement generally, that he then can be said to have "applied" for all future open positions, and can maintain a claim against the employer for its failure to give him promotions which he never explicitly sought. The Court will not extend Title VII employment discrimination law to support such a conclusion. Accordingly, as the plaintiff cannot satisfy the *prima facie* case, Count 2 is Ordered dismissed.

### ORDER

For the foregoing reasons, it is ORDERED that defendant's Motion for Summary Judgment, based on Fed.R.Civ.P. 56(c), be GRANTED.