William B. CUTSHALL, Jr., Plaintiff,

v.

John E. POTTER, Postmaster General, U.S. Postal Service, Defendant.

No. CIV. 1:03CV93.

United States District Court, W.D. North Carolina, Asheville Division.

Dec. 1, 2004.

John C. Hunter, Asheville, NC, for Plaintiff.

David K. Davis, United States Attorney, Asheville, NC, for Defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Defendant's motion for summary judgment, filed May 3, 2004; response and replies thereto have been filed. For the reasons stated below, the Defendant's motion is allowed and the case is dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

William Cutshall, a white male, was hired by the United States Postal Service Asheville Processing and Distribution Facility ("Defendant")[1] in a mail handler craft position on February 15, 1997. Plaintiff's Response to Defendant's Motion for Summary Judgment ["Plaintiff's Response"], filed May 20, 2004, at 6. In January 2000, Plaintiff applied for the position of Human Resources Specialist. Id., at 7. He was not selected for an interview for the position, and the position was not filled at that time. Id. In April 2000, Plaintiff applied for a temporary detail assignment to the position of Human Resources Specialist which still had not been permanently filled, but was temporarily being performed by Shonda Haynes, an African–American female, on a temporary detail assignment since October 1999. Id. The Defendant denied Plaintiff's request for a detail assignment. In May 2000, the permanent position of Human Resources Specialist was offered to Nancy Cunningham, a white female, who subsequently declined the position. Id., at 8. Plaintiff reapplied for the position in September 2000, but was again denied an interview. Id. Haynes was eventually awarded the permanent position of Human Resources Specialist in November 2000. Id.

During this same period, Plaintiff also applied for the position of Supervisor of Distribution Operations, the direct supervisor of the craft positions Plaintiff had occupied since he was hired. Id., at 13. Plaintiff received an interview for the position in May 2000, along with other candidates, all of which were white. Id. After the interviews, the position was offered to Mike Crask, a white male, who subsequently declined the offer. Defendant's Brief in Support of Motion for Summary Judgment ["Defendant's Brief"], filed May 3, 2004, at 12. The position was reposted and additional candidates were interviewed. Plaintiff's Response, at 14. Sharon Byrd, an African–American and one of the committee members conducting the interview, actively encouraged Ryan Gibson, an African–American male, to apply for the position. Gibson was granted an interview. Id. The committee, made up of two white members and one African American (Byrd), recommended that Gibson be awarded the position over Cutshall and the other applicants; Gibson was eventually awarded the position in July 2000. Defendant's Brief, supra; Plaintiff's Response, at 17.

Also during this period, in August 2000, Plaintiff entered the Asheville Supervisors Training Program to receive training and to be eligible for an appointment to an acting supervisor position. Plaintiff's Response, at 20; Defendant's Brief, at 14. Plaintiff claimed he was later denied these appointments in favor of other employees who were not in the Supervisors Training Program, which Plaintiff alleges was a requirement for such an appointment. Plaintiff's Response, supra.

Plaintiff filed this action against the Postmaster General of the United States Postal Service on April 21, 2003, alleging violations of Title VII of the Civil Right Act of 1964. Plaintiff alleges he was denied training opportunities and promotions based on his race; that the Defendant failed to promote him to the positions of Human Resources Specialist and the Supervisor of Distribution Operations be-

---

1. Plaintiff has actually sued John E. Potter, in his position as Postmaster General of the United States Postal Service. However, for ease of reference in the opinion, the Court has used the term "Defendant" to refer to the Asheville Processing and Distribution Facility of the United States Postal Service, the facility where the Plaintiff was employed.

cause of his race; and he was denied the opportunity to receive a detail assignment as Human Resources Specialist and additional acting supervisor appointments based on his race. Plaintiff has alleged what is commonly referred to as "reverse discrimination," where a member of the majority race is discriminated against in favor of members of a minority race. Defendant filed a motion for summary judgment on May 3, 2004. The responses and replies have been duly filed thereto.

## II. STANDARD OF REVIEW

Summary judgment should be granted when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed. R.Civ.P. 56(c). A genuine issue of material fact exists where there is evidence, viewed in the light most favorable to the non-moving party, such that a reasonable jury could find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party "may not rest upon the mere allegations or denials of [his] pleadings," but instead must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003). Unsupported allegations and speculation are not sufficient to defeat a summary judgment motion. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("One of the primary purposes of the summary judg-

ment rule is to isolate and dispose of factually unsupported claims or defenses.").

## III. DISCUSSION

### A. Failure to Promote Claims

 Plaintiff alleges he was discriminated against when he was passed over for two promotions for which he applied; one to the position of Human Resources Specialist and one to the position of Supervisor of Distribution Operations. To prove a case of discriminatory failure to promote under Title VII, Plaintiff must either put forth direct evidence of a discriminatory purpose by the Defendant in promoting its employees or circumstantial evidence of "sufficiently probative force to raise a genuine issue of material fact." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.1996). Plaintiff has not proffered direct evidence of discriminatory purpose of Defendant, instead describing his knowledge of actual discrimination to be "just a feeling." Exhibit A, Deposition of William B. Cutshall, *included in* Defendant's Exhibits to Brief in Support of Summary Judgment ["Defendant's Exhibits"], filed May 3, 2004, at 114–15. Therefore, Cutshall must prove his case through circumstantial evidence under the *McDonnell Douglas* scheme. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also, Lucas v. Dole*, 835 F.2d 532, 533–34 (4th Cir.1987) (applying *McDonnell Douglas* to Title VII reverse discrimination claims); *Paris v. Arc/Davidson County, Inc.*, 307 F.Supp.2d 743, 754 (M.D.N.C.2004) (same). Under *McDonnell Douglas*, Plaintiff must first prove a *prima facie* case of discriminatory failure to promote[2] by showing that:

---

2. Some circuit courts have held that for a plaintiff to prove a claim of reverse discrimination, he must also show "background circumstances [to] support the suspicion that the defendant is that unusual employer who dis-

criminates against the majority." *Parker v. Baltimore & Ohio R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir.1981). The Fourth Circuit has expressly declined to decide whether a plaintiff alleging reverse discrimination must also put

(1) [he] is a member of a protected class; (2) [his] employer had an open position for which [he] applied or sought to apply; (3) [he] was qualified for the position; and (4) [he] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.

*Evans,* 80 F.3d at 959–60; *see also, Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Plaintiff succeeds in placing before the Court evidence to establish a *prima facie* case by a preponderance of the evidence, the burden then shifts to the Defendant to put forth a legitimate, non-discriminatory reason for the employment action taken. *Evans,* 80 F.3d at 960. Once the Defendant has satisfied its burden, it then shifts to Plaintiff to prove that the proffered reason is merely a pretext for discrimination *Id.; Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994). To prove pretext in a failure to promote case, a plaintiff must generally show that he was more qualified for the position than the person selected or, that as between his race and the proffered explanation, his race is more likely the reason for his failure to be promoted. *Carter, supra.*

Though disputed by Defendant, the Court assumes arguendo that Plaintiff has made out a *prima facie* case of discriminatory failure to promote for both the Human Resources Specialist and the Supervisor of Distribution Operations positions. *See Evans,* 80 F.3d at 960 ("[W]e must remember that 'the burden of establishing a *prima facie* case ... is not onerous.'" (quoting *Burdine, supra* )). Following the

*McDonnell Douglas* framework, the burden then shifts to the Defendant to put forth a non-discriminatory, legitimate reason for the employment action taken. The Plaintiff then must put forth sufficient evidence that the proffered reason is merely a pretext for discrimination. The Court will examine these elements separately for each of the Plaintiff's claims of discriminatory failure to promote.

### 1) *Failure to Promote to Human Resources Specialist*

■ Defendant has asserted that Plaintiff was not awarded the promotion to Human Resources Specialist because he was not as qualified as Cheryl Haynes, an African American candidate who was awarded the promotion. Defendant has placed evidence before the Court that Haynes was rated "adequate" on seven of the ten requirements for the position, while Plaintiff was rated "adequate" on only three of the ten requirements, the lowest of any of the five candidates interviewing for the position. Defendant's Brief, at 9; Exhibit D, Affidavit of June Knowles, *included in* Defendant's Exhibits, at 1. Relative scores in testing and competency have been recognized as legitimate reasons for not promoting one employee in favor of another. *See Carter, supra; Favors v. Fisher,* 13 F.3d 1235, 1237 (8th Cir.1994). In addition, Haynes had sufficient education, work experience, and familiarity with the computer programs used in the new position. Defendant's Brief, at 11. Knowles, who served as the chairperson of the committee that recommended Haynes for the promotion,

---

forth evidence of this element beyond the traditional requirements of the *McDonnell Douglas* test. *Lucas,* 835 F.2d at 534. The Court finds it is unnecessary at this time to decide the issue about whether this additional element must be proven in a reverse discrimination claim. Assuming the Plaintiff here is

able to prove a *prima facie* case of reverse discrimination, he is unable to offer sufficient evidence that the Defendant's proffered reasons for the employment actions taken are pretext for discrimination. *See Paris,* 307 F.Supp.2d at 755.

stated that Haynes was chosen because she was the most qualified, and that she was unaware of the race of any of the candidates when the recommendation was made. *Id.*, at 9–10; Knowles Affidavit, at 1–2.

■ Given that Defendant has put forth a non-discriminatory, legitimate reason for hiring Haynes over Cutshall, Plaintiff must present evidence showing that he was more qualified than Haynes or that he was more likely passed over for the promotion because of his race as opposed to Haynes' superior qualifications. *See, Evans*, 80 F.3d at 960. In this regard, Plaintiff's arguments amount to nothing more than speculative assertions that he was more qualified than Haynes to receive the promotion. He argues that he has a superior education than Haynes, having received a bachelor's degree, and superior work experience and skills, rendering him more qualified. However, the evidence shows that a bachelor's degree was not required for the position and that both candidates had considerable work experience and skills required for the position. Exhibit J, Affidavit of Nancy Carte ["Supplemental Carte Affidavit"], *attached to* Defendant's Reply to Plaintiff's Response ["Defendant's Reply"], filed June 1, 2004, at 2. Additionally, "unsubstantiated allegations and bald assertions concerning [a

plaintiff's] own qualifications and the shortcomings of [his] co-workers fail to ... show discrimination." *Evans*, 80 F.3d at 960–61 (" 'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980)).

Plaintiff also asserts that the only reason Haynes rated higher than he on the Defendant's assessments of the requirements for the position was that she was improperly given training opportunities in a temporary detail position as Human Resources Supervisor.[3] Plaintiff alleges this assignment was discriminatory and unlawfully denied to him.[4] Plaintiff's Response, at 6–11. As support, Plaintiff cites a case outside this Circuit with held that an employer may not use a discriminatory detail assignment system to "preselect" individuals of one race for future promotion *Machakos v. Meese*, 647 F.Supp. 1253 (D.D.C. 1986). However, the facts in *Machakos* can be distinguished from those in the case at bar. In *Machakos*, the court found an extensive use of the detailing system to promote African American employees, examining "a series of personnel actions extending over a period of seven years." *Id.*, at 1261. Here, the scope of Plaintiff's allegations of the use of detail assignments

---

**3.** The Court will also treat this allegation as a separate discriminatory denial of training claim. *See infra*, Part III.B.

**4.** Plaintiff also alleges that the assignment of Haynes to a detail and her subsequent hiring to the permanent position violated Postal Service regulations. Under regulations in force when Haynes was assigned to the detail, she could not hold the position for more than 60 days and subsequently receive the permanent position. Exhibit D, United States Postal Service Employment and Labor Relations Manual, *attached to* Plaintiff's Response, at § 353.344. However, Haynes satisfied an exception to the general rule by assuming all of

the core responsibilities of the position. Supplemental Carte Affidavit, at 1. Therefore, Haynes did not violate this regulation. In June 2000, the Postal Service instituted new regulations stating an employee could not hold a position for more than 120 days and subsequently be hired to the permanent position. Defendant's Brief, at 8 n. 1. This regulation only applied prospectively to employees in detail positions as of June 3, 2000. Defendant's Reply, at 2. Because Haynes left her detail assignment on September 23, 2000, within 120 days of June 3, 2000, there is no dispute that she also fully complied with this regulation as well. Defendant's Brief, *supra*.

are not nearly as broad. Additionally, the evidence shows that two weeks prior to Haynes being awarded the detail assignment, the same detail assignment was offered to and accepted by a white employee, the same race as Plaintiff. Exhibit F, Affidavit of Deborah Henderson, *included in* Defendant's Exhibits, at 1. Haynes was only offered the detail assignment after the white employee decided to leave the assignment after two weeks. *Id.* These facts are inconsistent with a finding that the detail assignment was awarded in a discriminatory manner, as the *Machakos* court found. *Id.* ("The Court finds ... [a] covert and discriminatory use of the detailing practice"). Additionally, the Defendant's legitimate reason for assigning Haynes to the detail position instead of the Plaintiff is also inconsistent with a finding that Haynes' detail assignment was awarded to her based on her race. Defendant asserts that Haynes, unlike Plaintiff, did not require training from another employee before beginning the detail, and given the Postal Service was contemplating eliminating the specific position in the near future, it did not have the resources to train the Plaintiff. Exhibit E, Affidavit of Nancy Carte, *included in* Defendant's Exhibits, at 1. While the Plaintiff disputes this and claims he was told his application was denied solely because the position was being eliminated, the evidence shows that Haynes had been trained by the outgoing Human Resources Specialist Terry Miller before she left the position and before Plaintiff ever applied for the detail. Plaintiff's Response, at 10; Defendant's Reply, at 7. Additionally, the Human Resources office at the Asheville facility was a one person office and, therefore, there were no other employees in the office to train Plaintiff. *Id.* The Court distinguishes *Machakos* from the facts here, and chooses not to apply the principle espoused in that case to this action.

■■■ Plaintiff also offers statistical evidence that Defendant has racially discriminated in the awarding of promotions to its employees. Statistical evidence is permissible to prove an employer's stated reason is a pretext for discrimination. *Carter,* 33 F.3d at 456 (quoting *McDonnell Douglas* ). However, statistical evidence may not be useful where it has "little or no probative value." *Id.* For a claim based on discriminatory promoting, the relevant comparison is between the percentage of the promoted employees who are minorities and the percentage of potential minority applicants in the qualified labor pool. *Id.* Here, Plaintiff has put forth evidence that five percent (14 out of 280) of the Asheville facility's workforce were African–American, while 50 percent (5 out of 10) of the supervisory positions were filled by African–Americans. Plaintiff's Response, at 19. However, Plaintiff's statistical evidence does not include the relevant comparison to qualified applicants. To be promoted to a supervisory position, the employee must both apply for the position and be deemed as qualified. While the percentage of supervisory African–American employees is extremely large when compared with the overall makeup of the Asheville facility workforce, this evidence is not probative of the promoting practices of qualified applicants for supervisory positions. "The mere absence [or presence] of minority employees in upper-level positions does not suffice to prove ... discrimination without a comparison to the relevant labor pool." *Carter, supra.* Here the relevant labor pool is qualified applicants for supervisory positions and not the entire labor force of the Asheville facility. Therefore, Plaintiff's statistical evidence is not probative of the Defendant's alleged discriminatory promoting practices.

■■■ Further, the fact that Defendant offered the Human Resources Spe-

cialist position to Nancy Cunningham, a white female, in April 2000, prior to the position being offered to Haynes, is evidence of an absence of discriminatory motive.[5] In the analogous setting of discriminatory discharge, the Fourth Circuit has held that where an employee was hired and then fired by the same defendant in a short period of time, "there is a powerful inference . . . that discrimination did not motivate the employer[.]" *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir.1991). The court reasoned that "[f]rom the standpoint of a putative discriminator, it hardly makes sense to hire workers from a group one dislikes . . ., only to fire them once they are on the job." *Id.*, at 797 (internal quotations omitted). This reasoning translates easily to a discriminatory failure to promote claim. An employer acting with a discriminatory motive likely would not offer a promotion to an individual of one race, only to deny the same promotion to another employee of the same race, if discrimination against that race was the true motive. Therefore, the Court holds that the fact that an employer offered a promotion to a member of one race creates a "powerful inference" that the failure to offer the same promotion to another employee of the same race was not motivated by race discrimination. *See id.*, at 798. Further, the Fourth Circuit has applied this reasoning in the context of allegations of discriminatory failure to promote. *See Islar v. Ourisman Chevrolet Co., Inc.*, 172 F.3d 44 (table), 1999 WL 14120, at \*3 (4th Cir.1999). In *Islar*, the Fourth Circuit found that the defendant-employer had not acted with a discriminatory motive in failing to promote the African–American plaintiff to a management position, in part, because "the first person offered the [management position] was African American." *Id.*

■ Plaintiff's only additional evidence is his testimony that he had a "feeling" that race was being used as a basis for promoting African Americans within the Asheville facility.[6] Cutshall Deposition, at 114–15. However, this opinion evidence is not sufficient to defeat a motion for summary judgment. *See Tyndall v. Dynaric, Inc.*, 997 F.Supp. 721, 725 (E.D.Va.1998) ("The plaintiff's unsupported subjective perception of discrimination, standing alone, is irrelevant." (citing *Smith v. Flax, supra*)); *Brewer v. Dana Corp. Spicer*

---

**5.** Defendant has put forth evidence that it was not obligated to offer this position to Cunningham, a lateral transfer, as Plaintiff alleges. Supplemental Carte Affidavit, at 1.

**6.** Plaintiff also points to evidence of Defendant's discriminatory motive in a memorandum written by Henry Pankey, the Vice President for Mid–Atlantic Operations, which Plaintiff contends urges the preferential hiring of qualified African American applicants to management positions within the Postal Service. *See* Memorandum from Henry Pankey to Plant Managers and Installation Heads ["Pankey Memo"], dated December 17, 1992, *attached to* Defendant's Supplement to Reply and Discovery, filed June 14, 2004; Plaintiff's Response, at 21. The memo was written in 1992 while Pankey was the area manager of New York Metro processing and distribution of the Postal Service. Pankey Memo, at 1. While Plaintiff alleges Pankey was the ultimate decision maker in the promotion of Haynes to the position of Human Resources Specialist, Plaintiff's only evidence, outside of unsupported assertions, is the position Pankey occupied within the Postal Service at the time of Haynes' promotion and a form congratulatory note from Pankey to Haynes, which appears not to have been written by Pankey. Plaintiff's Response, *supra;* Exhibit M, *attached to* Plaintiff's Response. To the contrary, Defendant has put forth evidence that Pankey played no role in the decisions to promote Haynes or Gibson. Supplemental Carte Affidavit, at 2. Further, Plaintiff has not alleged nor produced any evidence that the memo was intended for, known by, or relied upon in any way by those who did make the employment decisions at issue in this case.

*Heavy Axle Div.,* 205 F.Supp.2d 511, 518–19 (W.D.N.C.2002) ("a plaintiff's belief that he was fired because of a discriminatory reason," is not relevant).

In sum, the Court finds that Plaintiff has not met his burden of showing that Defendant's proffered reason for not promoting him to the position of Human Resources Specialist was pretext for racial discrimination. Therefore, Defendant's summary judgment motion is granted with respect to this claim.

2) *Failure to Promote to Supervisor of Distribution Operations*

■ Defendant justifies the failure to promote Plaintiff to the Supervisor of Distribution Operations, in part, because of his excessive absences when compared with Ryan Gibson, who was awarded the promotion. Defendant's Brief, at 13. However, the Court finds that Defendant's assertion of Plaintiff's excessive tardiness is not supported by competent evidence. Defendant has presented to the Court a colored chart demonstrating the number of times Plaintiff was late arriving and clocking into work compared with other employees, including Gibson. *See id.,* at 14. However, while Defendant's chart covers the time period from April 2000 until May 2001, the decision to promote Gibson to the position of Supervisor of Distribution Operations was made in July 2000. Plaintiff's Response, at 17. Therefore, any tardiness recorded after July 2000 could not have been relevant to the Plaintiff's qualifications for the position. Defendant's chart does not provide details, nor does any of its other evidence, as to how many instances of tardiness involving the Plaintiff allegedly occurred prior to July 2000. The Defendant has failed to provide any other evidence substantiating its claims of Plaintiff's tardiness or any raw data or source from which its chart was constructed.

However, Plaintiff's assertions in response are equally faulted. Plaintiff claims he was tardy only once during the period prior to July 2000, compared with five instances of tardiness by Gibson for the same period. *Id.;* Exhibit E, Affidavit of William Cutshall, *attached to* Plaintiff's Response, at 2. However, Plaintiff apparently calculated these totals using his interpretation of a "five-minute exception" to tardiness as he understands it is enforced under Postal Service regulations. Cutshall Affidavit, at 2. Plaintiff also failed to produce any evidence supporting his assertion or the time records he claims to have used to calculate his attendance numbers. Accordingly, given that the controverted evidence of clockring or time records documenting Plaintiff's attendance were not submitted to the Court in proper form for consideration under summary judgment, the Court will not consider the parties' differing claims regarding the number of times Plaintiff was tardy in the relevant time period before the position was awarded. *See Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993) ("To be admissible at summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" (quoting 10A Charles Wright, Arthur R.Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2722, at 58–60 (1983 & 1993 Supp.)).

■ A plaintiff may also satisfy his burden under *McDonnell Douglas* and defeat a summary judgment motion by showing only that an employer's proffered reason for an employment action is unworthy of credence. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, an employer may still be entitled to summary judgment, even where a plaintiff has made this showing, where "the record conclusively reveal[s] some other, non-dis-

criminatory reason for [its] decision." *Id.* While the Court finds that one of Defendant's proffered reasons for failing to promote the Plaintiff is not supported by competent evidence, and therefore unworthy of credence at this time, the Court also finds that the evidence conclusively supports Defendant's other non-discriminatory reason for the employment action taken.

 Defendant also justifies the failure to promote Cutshall to the position of Supervisor of Distribution Operations on the ground that when faced with the choice of equally qualified candidates, an employer may permissibly choose between them. Defendant's Brief, at 14. The Fourth Circuit has held that an "'employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria.'" *Evans,* 80 F.3d at 960 (quoting *Wileman v. Frank,* 979 F.2d 30, 38 (4th Cir.1992) (other citations omitted)). Defendant has put forth evidence that Gibson, the African American male awarded the position, had the requisite education and work experience to qualify for the job. Again, Plaintiff's bald assertions that he was superiorly qualified for the position because of his education and work experience fails to create a genuine issue of fact in this claim as it did in Plaintiff's previous claim. *See id.,* at 960–61 ("[U]nsubstantiated allegations and bald assertions concerning [a plaintiff's] own qualifications and the shortcomings of [his] co-workers fail to .... show discrimination.") Both Plaintiff and Gibson had the required levels of education and work experience to satisfy the qualification requirements for the job. Where

an employer must decide between two qualified employees for one promotion, the Court will not infer discrimination when an employee of one race is chosen over an employee of another without additional evidence of discrimination.

Further, the evidence shows that the position of Supervisor of Distribution Operations was first offered to Mike Crask, a white employee, before it was offered to Gibson. Defendant's Brief, at 12. As discussed *infra,* this creates a strong inference against Plaintiff's argument that he was denied the promotion because of his race. *See Islar, supra* (finding no racial discrimination in part because the first person offered the position at issue was someone of plaintiff's race); *see also Proud,* 945 F.2d at 797. Plaintiff's other arguments and evidence are unable to surmount this inference.[7]

██ Plaintiff also argues that Gibson was provided answers to interview questions prior to his interview by Sharon Byrd, one member of the interviewing committee. This allegation is disputed by Gibson, Byrd, and an internal investigator from the Postal Service's Charlotte office who undertook an investigation of the alleged incident. However, even if Byrd had violated regulations and provided Gibson with answers to her interview questions, the allegations do not create an inference of discrimination to defeat summary judgment. First, Plaintiff offers no evidence of a discriminatory motive behind Byrd's alleged actions. Further, Byrd composed only one third of the interviewing committee, which was empowered to recommend

---

7. As evidence of discrimination for this failure to promote claim, Plaintiff has asserted much of the same evidence asserted for his previous failure to promote claim, namely, the statistical evidence of the disproportionate representation of African Americans promoted, he and other employees had a "feeling" that pro-

motions were being awarded based on race, and the Pankey Memo. Plaintiff's Response, at 18–22. For the same reasons these arguments failed to create a genuine issue of fact for trial under Plaintiff's first claim, they also fail here.

a candidate for promotion, not make the actual promotion decision. Defendant's Response, at 8. While Byrd played an influential role on the interviewing committee, she was not the ultimate decision maker, nor did she even have the authority to solely recommend Gibson for the promotion without the support of at least one other member on the committee. *Id.* Therefore, Byrd was adequately insulated from the ultimate decision maker in that even if she did give the answers to interview questions to Gibson, such action is not attributable to the entity. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 291 (4th Cir.2004) (holding a claim against an employer, based on the discriminatory actions of employee who does not make the final or formal employment decision, will not succeed "simply because [the employee] had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision.").

The Court finds that the Plaintiff has not met his burden that Defendant's proffered reason for failing to promote him to the position of Supervisor of Distribution Operations was a pretext for discrimination. Therefore, Defendant's summary judgment motion is granted as to this failure to promote claim.

**B. Discriminatory Denial of Training Claim**

 Plaintiff has also implicitly pled claims of discriminatory denial of training under Title VII. Plaintiff has alleged he was denied the temporary detail position of acting Human Resources Specialist because of his race. This temporary position was given to Haynes and allegedly provided her with the training necessary to be considered more qualified for the position when it was eventually permanently filled. Additionally, Plaintiff alleges he was denied participation in acting supervisor appointments [8] on the basis of his race. Because Plaintiff has not put forth direct evidence of discriminatory denial of training, he must again proceed under the *McDonnell Douglas* framework. To prove a *prima facie* case, Plaintiff must prove the following elements:

> (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination.

*Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649–50 (4th Cir.2002). The remaining structure of the *McDonnell Douglas* framework remains the same as under Plaintiff's failure to promote claims.

 Assuming Plaintiff can establish a *prima facie* case of discrimination regarding the failure to train him through placement in a temporary detail position, he is not able to satisfy his burden of proving the proffered reason is a mere pretext for discrimination. Defendant has put forth evidence that Plaintiff was denied a temporary detail position as Human Resources Specialist because there were no available resources in Asheville to properly train him for the position and it was considering eliminating the position. Defendant's Brief, at 9. As discussed *infra,* Haynes, who was granted the detail position, had started the detail at a time when training was available from outgoing Human Resources Specialist Terry Miller. Carte Affidavit, at 1. While Plaintiff disputes this, the evidence shows that Haynes had been trained by Miller before Miller left the position and before the Plaintiff ever ap-

---

**8.** The parties refer to these acting supervisor appointments as 204B appointments.

plied. Defendant's Reply, at 7. At the time Plaintiff applied for the position, Miller was not available to train him. Carte Affidavit, at 1.

Further, Defendant has put forth evidence that the temporary detail position was first offered to a white employee, Judy Viebrock, prior to it being offered to Haynes. Henderson Affidavit, at 1. Viebrock held the detail position for a two week period before deciding to leave. *Id.* Where a position was first offered to someone of the Plaintiff's race, a strong inference exists against the Plaintiff's argument that he was denied the same position because of his race. *See Islar, supra* (finding no racial discrimination in part because the first person offered the position at issue was someone of plaintiff's race); *see also Proud*, 945 F.2d at 797. The Court finds that Plaintiff has not met his burden of showing Defendant's proffered reason for awarding Haynes the detail position was pretext for discrimination and, therefore, grants Defendant's motion for summary judgment on this claim.

The Court also disposes of Plaintiff's claims that he was denied training and participation in acting supervisor appointments on the basis of his race. Plaintiff alleges that an African-American employee, John Gilliam, was given an appointment instead of him, even though Gilliam had not completed the training program which Plaintiff claims was a requirement for the appointment. However, Defendant has put forth evidence that at the time the alleged reverse racial discrimination took place, two white employees, Anne Nehme and Dan Dittman, were also awarded acting supervisor positions despite their non-participation in the "required" training program. Exhibit K, Affidavit of Debra Pearson, *attached to* Defendant's Reply, at 1. Therefore, the Court finds that Plaintiff is unable to show circumstances giving rise to an inference of discrimination. *See Islar, supra; Proud, supra.* Defendant's motion for summary judgment as to this claim is granted as well.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is **ALLOWED** in all respects, and the Plaintiff's claims are dismissed by way of Judgment filed herewith.

## JUDGMENT

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Defendant's motion for summary judgment is **ALLOWED**, and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.