Durgaprasad L. VALLABHAPURAPU,
Plaintiff,

v.

The FIRST NATIONAL BANK
OF CHICAGO, Defendant.

No. 96 C 6496.

United States District Court,
N.D. Illinois,
Eastern Division.

March 23, 1998.

Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Law Offices of Gerald A. Goldman, Chartered, Chicago, IL, for plaintiff.

Lynn Adrian Goldstein, First National Bank of Chicago, Chicago, IL, Gloria R. Mitka, First National Bank of Chicago, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Durgaprasad Vallabhapurapu ("Prasad") filed suit in this Court against his employer, First National Bank of Chicago ("FNB"), seeking compensatory damages and back pay arising from his demotion. Count I of Prasad's complaint alleges that FNB demoted him because of his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Count II alleges that the demotion was based on race in violation of Title VII. Count III charges that FNB demoted Prasad because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* FNB has moved for summary judgment on all counts. Both parties have also filed motions to strike certain evidence from the record.

### RELEVANT FACTS [1]

We begin by presenting the facts in a light most favorable to the plaintiff. *See Wolf v. Buss America, Inc.,* 77 F.3d 914, 918 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996). Prasad began working for FNB in 1978. Def.'s Facts ¶ 1. On July 5, 1993, he was promoted from Security Supervisor III, grade 9 ("Sergeant"), to Security Supervisor 1, grade 12 ("Commander") for the third shift of FNB's security operations. *Id.* Prasad is of Indian descent, Asian race, and is over 40 years old. Def.'s Facts ¶ 5.

The decision to promote Prasad (and later to demote him) was made by Timothy T. Janes. Def.'s Facts ¶ 4; Janes Dep., Ex. C, at 10–11. Janes has been FNB's regional manager of security operations for the last five years. Def.'s Facts. ¶ 4; Janes Dep., at 4. As such, he has been either directly or indirectly in charge of Prasad during this time. Def.'s Facts ¶ 4; Janes Dep., at 4. When he promoted Prasad, Janes knew his age, race and national origin. Def.'s Facts ¶ 4; Janes Aff., Ex. D, ¶ 5.

The employees Janes promoted normally received a raise to the minimum level of their new salary grade. If the employee's former salary exceeded the new minimum, however, Janes simply raised the employee's salary 2–4%. Def.'s Facts ¶ 7; Janes Aff., ¶ 3. Since Prasad already earned more than the base salary for his new grade 12 position,

---

1. The facts are derived from statements that the parties filed with this Court under the Northern District of Illinois' Local General Rule 12(M)–(N). Rule 12(M)(3) requires a party moving for summary judgment to file a "statement of material fact as to which the moving party contends there is no genuine issue." The movant's statement must contain "specific references to affidavits, parts of the record, and other supporting material relied upon to support the facts set forth." Rule 12(M)(3). FNB's statement is cited as "Def s. Facts ¶ —." Similarly, Rule 12(N)(3)(a) requires the non-moving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. Prasad's response is cited as "Pl.'s Facts ¶ —." Rule 12(N)(3)(b) authorizes the non-moving party to submit a statement of "additional facts that re-

quire the denial of summary judgment." Under 12(M), the moving party may then submit a reply to the non-moving party's additional facts. Prasad's statement of additional facts is cited as "Def's Resp. ¶ —." FNB's reply is cited as "Def s. Resp. Add'l Facts ¶ —." All properly supported material facts set forth in either party's statement of facts are deemed admitted unless properly controverted. *See* Local Rule 12(M) and 12(N)(3)(b); *see also Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir.1994). The mere denial of a particular fact without specific references to the affidavits, parts of the record, and other supporting materials is insufficient. *Flaherty,* 31 F.3d at 453. Where a properly supported factual assertion is met with such a naked denial, the fact may be deemed admitted. *Id.*

Janes gave Prasad a 2% raise.[2] He was also aware that Prasad had received a 3% raise less than a month before his promotion. Def.'s Facts ¶¶ 6, 8; Janes Aff. ¶¶ 3–4. The 2% increase took into consideration the salaries of other shift commanders as well—Janes did not want a new shift commander's compensation to exceed that of more senior shift commanders. Def.'s Facts ¶ 8; Janes Aff., ¶ 4. Prasad's 2% raise placed him well above the minimum pay level for his position. Def.'s Facts ¶ ; Janes Aff. ¶ 4.

■ Prasad began in his new position on July 5, 1993. Comp. ¶ 8. As third shift Commander, Prasad's duties included supervising security personnel, and building trust, confidence and cooperation among third shift employees. Def.'s Facts ¶ 9; Pl. Dep., at 54, 58. In March 1994, however, several of Prasad's subordinates—George L. VonKrause, Sandra M. Jacobs, Sharon C. Robinson, and Juanita M. Davis—began complaining to Janes about Prasad's management style.[3] Def.'s Facts ¶¶ 10–12; Janes Dep., at 17–18, 103–04. Richard D. Bargas and Daniel F. Kenealy, both sergeants (mid-level supervisors) on the third shift, also complained about Prasad's poor management. Def.'s Facts ¶¶ 11–12; Janes Aff., ¶ 6; Janes Dep., at 17–18, 103–04.

None of these complaints were ever documented or made part of Prasad's personnel file. Pl.'s Add'l Facts ¶ 3.

George VonKrause, a protection officer working under Prasad, talked to Janes about Prasad several times. Def.'s Facts ¶ 13; Janes Dep., at 29. VonKrause complained that Prasad yelled at him, demeaned him in front of others, and did not listen when approached by other security officers. Def. Facts ¶ 13; Janes Dep., at 30. In addition, VonKrause told Janes that morale was low on the shift because of Prasad's ineffective management. Def. Facts ¶ 13; Janes Dep., at 30–31, 35–36. He alleged that Prasad often held female officers to a higher standard than their male counterparts and reprimanded the women more frequently. Def.'s Facts. ¶ 13; Janes Dep., at 106–07. VonKrause explained that other officers had the same complaints but were afraid to come forward for fear that Prasad would retaliate against them. Def. Facts. ¶ 13; Janes Dep., at 36.

Sandra Jacobs, another protection officer on the shift, told Janes that Prasad treated her poorly and frequently yelled at her. Def.'s Facts ¶ 14; Janes Dep., at 37. She

**2.** In the second paragraph of his affidavit, Prasad states that he had a conversation with an unnamed Human Resources Representative who told Prasad that the raise should have been 5%. Prasad Aff. ¶ 2. However, FNB correctly points out that this conversation consists of inadmissible hearsay and, therefore, must be stricken. *See Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367 n. 1 (7th Cir.1997) (finding that a party cannot rely on inadmissible hearsay to oppose summary judgment). Prasad offers this statement only to prove the truth of the matter asserted. Moreover, the statement lacks foundation because it does not disclose the speaker's identity, making it impossible to determine whether he or she had personal knowledge about this issue. For these reasons, FNB's Motion to Strike ¶ 2 of Prasad's affidavit is granted.

**3.** Prasad has moved to strike paragraphs 13–19, 35, 56, and 58 of FNB's 12(M) statement, arguing that his subordinates' complaints to Janes are inadmissible hearsay. These statements are not, however, introduced for their truth, i.e., to show that Prasad was a poor manager. Rather, FNB permissibly presents the statements to show their effect on Janes' assessment of Prasad. To rebut Prasad's argument that Janes' reasons for demoting him were a pretext for discrimination, FNB

must show that Janes honestly believed those reasons, *Tincher v. Wal–Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir.1997) ("The mere fact that the employer acted incorrectly or undesirably, however, cannot adequately demonstrate pretext; rather, the employee must prove that the employer did not honestly believe the reasons it gave for the firing."). As such, it is proper for FNB to present evidence that influenced Janes' beliefs about Prasad's performance. *See Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403–04 (7th Cir.1992) (decision-maker's state of mind is the relevant issue in determining whether employer's reasons for adverse action were legitimate). In other words, the Court must inquire whether Janes honestly believed that these statements were true, not whether the statements were in fact true. *Tincher*, 118 F.3d at 1130; *see Tonella v. Environmental Sys. Design, Inc.*, 1997 WL 112837, at * 1 (N.D.Ill. Mar. 10, 1997) (denying a motion to strike alleged hearsay because statement was properly before the court to show how it affected the employer); IV JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1766, at 250–53 (1990). Prasad's Motion to Strike is therefore denied. We emphasize that his subordinates' statements will be considered only for the limited purpose of showing their effect on Janes' beliefs.

recounted an incident where Prasad refused to accommodate (or even listen to) her request for a schedule change to care for her elderly mother. Prasad replied that he didn't want to hear it, that Jacobs had a job to do and she had better be to work on time. Def.'s Facts ¶ 14; Janes Dep., at 105–06.

Other protection officers and sergeants on the shift echoed these sentiments. Officer Sharon Robinson informed Janes that Prasad treated employees on the shift poorly, berating them in front of their peers. Def.'s Facts ¶ 15; Janes Dep., at 103–04. Officer Juanita Davis told Janes she was one of those employees, reporting that Prasad frequently berated and demeaned her. Def.'s Facts ¶ 16; Janes Dep., at 103–04. Sergeants Bargas and Kenealy repeatedly complained that Prasad had belittled them in front of others and undermined their authority. Def.'s Facts ¶¶ 17–18; Janes Dep., at 25–28, 36–37. Janes says he was concerned about these complaints, and considered them serious because of their nature, frequency and number. Def.'s Facts ¶¶ 19, 20; Janes Dep., at 107–08. Despite his concern, Janes did not record the complaints or keep notes from his conversations with these employees. Pl' Add'l Facts ¶ 3.

■ Based on Prasad's experience working other shifts and his discussions with other shift supervisors, Prasad maintains that employee morale on his shift was no worse than on other shifts.[4] Pl's Facts ¶ 21, Pl's Aff. ¶ 5. Nevertheless, in Janes' view, during the time that Prasad was third shift Commander, his crew's morale was much worse than others'. Def.'s Facts ¶ 21; Janes Dep., at 33–34. Janes formed this assessment based on the number and substance of comments about Prasad, and the employees' general demeanor and attitude coming off the shift. Def.'s Facts ¶ 21; Janes Dep., at 34–35.

Janes had a few one-on-one meetings with Prasad to make him aware of these complaints, as well as to counsel him on improving his leadership. Def.'s Facts ¶ 22; Janes Dep., at 40–43, 50–51. Janes also discussed, in general terms, employee complaints and morale in meetings with Prasad and all the shift commanders, and discussed problems specific to the third shift in meetings with just Prasad and his sergeants. Def.'s Facts ¶¶ 22–24; Pl.'s Facts ¶ 22; Def.'s Resp. ¶ 10; Janes Dep., at 45–46; Pl.'s Dep., at 67, 180. Janes detailed employee complaints about low morale and Prasad's refusal to entertain their requests and suggestions. Def.'s Facts ¶ 24; Janes Dep., at 45–46; Pl.'s Dep. at 68–71, 180. Following these meetings, Prasad agreed to implement strategies to manage the shift more effectively and compassionately. Def.'s Facts ¶ 25; Pl.'s Dep., at 189. He concurred that improving morale, maintaining open communication, and soliciting ideas from employees were among his legitimate job expectations. Def.'s Facts. ¶ 25; Pl.'s Dep., at 81.

In June 1994, Janes completed Prasad's written evaluation covering the May 1993 through May 1994 time period. Prasad received an "accomplished" rating, which fell in the middle of a three-point scale. Def.'s Facts ¶ 26; Ex. F., Def.'s Mot. For Sum. Jdgt. Janes tempered the rating slightly by mentioning that Prasad needed to work on his management skills:

> Overall, Prasad has been an effective supervisor over the 3rd shift uniformed security operations. He is very dedicated to the bank and to his unit and has made good strides in creating an effective operating atmosphere for the shift. Prasad needs to improve in his management style as it relates to leadership of the officers on his shift, being more diplomatic and sensitive to the protection officers needs, while still exercising a fair, consistent and complete approach to the operations of the

---

4. Prasad states in paragraph five of his affidavit that, having worked both the first and third shifts at FNB, he concluded that protection officers' morale did not vary among shifts. FNB has moved to strike this paragraph, contending that it lacks foundation and is purely conclusory. The foundation objection fails, however, because Prasad provides a foundation—personal observa-

tion of employee morale on both the first and third shifts. The fact that Prasad appears to extrapolate from two shifts to all three shifts goes to the statement's weight, not its admissibility. Nor are we persuaded that Prasad's statement is so conclusory that it fails the requirements in Fed.R.Civ.P. 56(e). Thus, FNB's Motion to Strike ¶ 5 of Prasad's affidavit is denied.

unit. Overall, Prasad has performed at an accomplished level in his position as commander of the third shift.

Ex. F., Def.'s Mot. For Sum. Jdgt. Prasad was also rated "accomplished" before his promotion. Pl.'s Mot. In. Opp. To Sum. Jdgt., Ex. 1.

Prasad's subordinates nonetheless continued to inundate Janes with complaints about Prasad's behavior. Def.'s Facts ¶ 27; Janes Dep., at 28, 46, 61–62, 107. In late spring or early summer 1994, Janes decided to work a third shift to assess these complaints first-hand. Def. Facts ¶ 28; Janes Dep., at 30. While on the shift, he spoke with several employees about the shift's environment and employee attitudes. Def. Facts. ¶ 29; Janes Dep. at 31. Officer VonKrause told Janes that officers were "intimidated," "scared," and "looked like zombies," so preoccupied with what Prasad might to do them that they weren't paying attention to their jobs. Def. Facts ¶ 29; Janes Dep., at 31, 108. Given this and similar comments Janes heard that evening, Janes became concerned that Prasad's poor management could jeopardize FNB's security. *Id.*

Janes met again with Prasad and his sergeants to discuss the third shift problems. Def.'s Facts ¶ 31; Janes Dep., at 62. Prasad initially denied responsibility, but then relented slightly, acknowledging some responsibility and promising improvement. Def.'s Facts ¶ 31; Janes Dep., at 62, 87, 98. After the sergeants left, however, Prasad explained that he thought the problem was actually with the sergeants, and that he would take care of it. Def.'s Facts ¶ 31; Janes Dep., at 62, 98. In Janes' opinion, Prasad's tone revealed that he really did not acknowledge responsibility for third shift conditions, and was instead trying to shift the blame. Def.'s Facts. ¶ 31; Janes Dep., at 98–99; Janes Memo, Ex. G. This, combined with Janes' concern that Prasad's actions put FNB's security at risk, led Janes to conclude that it was in FNB's best interests to remove Prasad from his supervisory duties. Def.'s Facts. ¶ 31; Janes Dep., at 98–99; Janes Memo, Ex. G.

To determine his options, Janes met with F. Michael Bilski of FNB's Human Resources Department. Def.'s Facts ¶ 34; Janes Dep., at 63, 74–75. Bilski told Janes that he could either reassign Prasad to another position or begin the disciplinary process for performance failures. Def.'s Facts ¶ 35; Janes Aff., ¶ 9; Janes Dep., at 74–75. Bilski then consulted with Mary K. Kennedy Carew, a colleague in the Human Resources Department.[5] Def.'s Facts ¶ 56; Kennedy Carew Aff., Ex. I, ¶ 4. Carew told Bilski that she knew other FNB employees who were reassigned to lower grade positions without going through the disciplinary process, and agreed that it would be permissible to reassign Prasad in the same manner.. Def. Facts ¶ 57; Kennedy Carew Aff., Ex. 1, ¶¶ 5–6. Janes also consulted others in his department, including managers Fred J. Misklin, Willie Simmons, and Christopher L. Wagner. All agreed that Janes should reassign Prasad. Def.'s Facts ¶ 39; Def.'s Answer to Interrogatory No. 2; Janes Dep., at 63, 73–74.

Janes acknowledged that he never gave Prasad a "Formal" or "Final" warning for performance failures—warnings that would have been required if Janes had instituted disciplinary action against Prasad. *See* Def.'s Facts ¶¶ 42–43. Given that this was a reassignment, however, Janes believed that formal warnings were not required. Janes Aff., ¶ 10.

■ Ultimately, Janes chose to reassign Prasad because he believed that formal discipline was inappropriate. Def. Facts ¶ 36; Janes Dep., at 74–76. He felt that placing Prasad in the Security Protection Officer I, grade 8 position—a nonsupervisory post—would provide a good fit with Prasad's strengths.[6] Def.'s Facts ¶ 36; Janes Dep., at

---

5. Prasad requests this Court to strike portions of Carew's affidavit, arguing that Bilski's statements to her about Prasad's poor performance and employee complaints are hearsay. We deny the motion for the same reasons expressed in footnote 3. These statements are not offered for their truth, but rather to demonstrate their effect on the persons making the decision to demote Prasad.

6. In paragraph seven of his affidavit, Prasad states that another shift supervisor, Willie Simmons, told Prasad that he would have handled

76; Janes Aff., Ex. D, ¶ 10. Janes met with Prasad to explain his reassignment. During the meeting, they discussed the problems previously brought to Prasad's attention. Def.'s Facts ¶ 40; Pl. Dep., Ex. E, at 96–97. Janes also gave Prasad a memo summarizing the reasons for his reassignment and walked Prasad through them. Def.'s Facts ¶ 40; Janes Dep., at 70, 84, 101. Janes signed the memo, but Prasad did not. Def.'s Mot. For Sum. Jdgt., Ex. G. Prasad was reassigned to the Protection Officer I position on November 7, 1994. Def.'s Facts ¶ 37; Comp., Ex. A., ¶ 9. On January 9, 1995, Janes appointed Daniel F. Kenealy, a 38–year–old Caucasian, to be third shift Commander. Janes testified that Kenealy's promotion was based on his experience and qualifications.[7] Janes Aff., ¶ 11; Def.'s Facts ¶ 45.

Prasad was not the first employee Janes had reassigned. A white employee in Prasad's department was demoted from Sergeant to a Protection Officer I because he had problems making decisions, supervising other officers, and exercising proper judgment. Def. Facts ¶ 44; Janes Dep., at 77–78.

Several months after Prasad was reassigned, he applied for a security coordinator position. The supervisor in that area, Anthony C. Carey, told Prasad he was not eligible because he had not been in his current position for one year. Def.'s Facts ¶ 46–47; Pl.'s Dep., at 164–65.

Prasad filed a charge with the EEOC on August 23, 1995, alleging that he was discriminated against on the basis of his race, national origin, and age when Janes reassigned him from Commander to Security Protection Officer I. Def.'s Facts ¶ 48, Ex. J. On July 9, 1996, Prasad received a right to sue letter from the EEOC.

■■■■ Prasad then challenged his demotion in a three-count complaint in this Court. Count I claims that his demotion was national origin discrimination; Count II, that it was race discrimination; and Count III, that it was age discrimination.[8] Prasad points to

Prasad's situation "differently." FNB moved to strike this paragraph on hearsay grounds. We grant the motion, and add that the statement lacks relevance. Prasad offers this statement to prove what Simmons said was true—that Simmons really would have handled this situation differently. From this, he apparently wishes us to conclude that Janes dealt with Prasad's situation incorrectly. However, the employment discrimination laws are not directed toward ensuring that employment decisions are correct—only that they are nondiscriminatory. See Anderson v. Stauffer Chem. Co., 965 F.2d 397, 403–04 (7th Cir.1992) ("Neither the jury nor this Court is empowered to act as a 'super-personnel department' and decide if [a] firing was unwise or unjustified.") (internal quotations and citations omitted). The wisdom of Janes' decision, which Prasad wishes us to assess based on hearsay, is irrelevant. See id. (noting the Seventh Circuit has "consistently refused" to review the "wisdom" of the employer's decision).

7. In paragraph eight of his affidavit, Prasad asserts that Kenealy was not promoted to Commander until January 1, 1995 (two months after Prasad vacated the position) because he had to work as a sergeant a full year before he was eligible for a promotion. FNB has moved to strike this paragraph, contending it is irrelevant and lacks a factual basis. We agree that it is irrelevant. Nowhere in his pleadings or memoranda does Prasad explain how this point helps Prasad's case. We fail to see how Kenealy's promotion after one year's work tends to show that Prasad's demotion was discriminatory.

8. FNB moved to strike paragraphs nine and ten of Prasad's affidavit. In those paragraphs, Prasad states that he did not understand deposition questions relating to his discrimination claims, and clarifies that he suffered discrimination when he received only a 2% raise, was demoted, and was inadequately warned before his demotion. FNB characterizes these statements as a post-hoc attempt to correct unfavorable deposition testimony. It refers to the following testimony from Prasad's deposition:

Q. Please describe for me every incident or remark when any current or former employee of First Chicago exhibited discriminatory behavior toward you?
A. I could not recollect any specific incident. And I was always uncomfortable with Tim James [sic] present during my meetings.
Q. I am sorry. Could you repeat that?
A. Uncomfortable when I have contact with Tim James [sic] after I became commander because he is my immediate supervisor.
Q. What do you mean by uncomfortable?
A. I was always tight or not relaxed in his presence. I don't know how to explain. I am trying such a word.
Q. Did Mr. James [sic] ever say anything to you of a discriminatory nature?
A. I don't recall any.
Q. Did any other First Chicago employee ever say anything to you that was discriminatory in nature?
A. No, I don't remember anything.
Q. Did Tim James [sic] ever make any comments to you about your race?

the fact that he received an "accomplished" rating as third shift commander, and that he was replaced by a less experienced, white employee under 40. FNB has moved for summary judgment on all counts. In addition, it moved to strike portions of Prasad's affidavit, while Prasad filed a motion to strike parts of Janes' affidavit. For the reasons explained above, Prasad's Motion to Strike is denied, and FNB's Motion to Strike is granted in part and denied in part.[9] For the reasons that follow, FNB's motion for summary judgment is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court must view all evidence in a light most favorable to the non-moving party, and draw all inferences in the non-movant's favor. *See Wolf,* 77 F.3d at 918. However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–50; *Unterreiner v. Volkswagen, Inc.,* 8 F.3d 1206, 1212 (7th Cir.1993).

In ascertaining whether a genuine issue of material fact exists, the court must "view the evidence presented through the prism of the

A. No.
* * * * * *
Q. Did Tim James [sic] ever make any decisions about your employment that were discriminatory?
A. I don't recollect any specific details.
Q. Do you have any complaints about not getting any kind of written warnings?
A. I don't remember anything like that.
Q. Do you have any complaints about not getting any kind of verbal warnings?
A. Not that I know.
* * * * * *
A. Not that I know.
Q. Do you have any complaints about not receiving any verbal warnings?
A. No.
Prasad's Dep., at 105–07.
We grant FNB's motion to strike the affidavit's statements attacking the inadequate warnings because Prasad clearly abandoned this claim in his deposition. Prasad testified there that he has no complaints about the lack of verbal warnings, and does not remember having any complaints about the lack of written warnings. Although Prasad states in the affidavit that he did not understand these questions, we see no indication that they were asked in a confusing manner or posed out of context. Therefore, we must disregard the conflicting statements in Prasad's affidavit. *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 67–68 (7th Cir.1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy."). Moreover, the inadequate warning issue is not properly before the court as a separate basis of discrimination because it is not like or reasonably related to the

allegations in Prasad's EEOC charge (although we acknowledge that, if Prasad had not expressly denied dissatisfaction with the warnings, their absence may have been admissible to show that his demotion was discriminatory). *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."); *see Taylor v. Western & Southern Life Ins. Co.,* 966 F.2d 1188, 1196 (7th Cir.1992) (evidence relating to claims not contained in EEOC charge may be admissible to prove discrimination claims properly before the court). For the same reason (explained more thoroughly below), we strike Prasad's reference to the 2% raise as a basis for discrimination.

Nevertheless, we deny FNB's motion to strike Prasad's statement that his demotion was discriminatory. Although Prasad testified that he did not recall *specific details* of discriminatory employment decisions, this does not directly contradict his claim that his demotion was the product of illegal discrimination. Furthermore, from the EEOC charge forward, Prasad has consistently relied on the demotion as the basis for his discrimination claims. Finally, the question whether Prasad has produced sufficient evidence to take his discrimination claims to a jury is an issue for this Court to determine on summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather than striking the assertion "I was discriminated against" from Prasad's affidavit, we will examine the evidence independently. FNB's motion to strike paragraphs nine and ten is therefore granted in part and denied in part.

9. *See supra* notes 2–8.

substantive evidentiary burden." *Liberty Lobby,* 477 U.S. at 254. If the "record taken as a whole could not lead the trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial." *See Matsushita Elec. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In making this determination, this Court's sole duty is to determine whether sufficient evidence exists to support a verdict in the non-movant's favor; thus, credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of the judge deciding a motion for summary judgment. *See Liberty Lobby,* 477 U.S. at 255. In an employment discrimination suit, where issues of intent and credibility often dominate, these standards apply with added rigor. *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir. 1994).

## ANALYSIS

We begin by clarifying the scope of the discrimination claims before us. In his complaint, Prasad alleges only that his demotion was discriminatory. Comp. ¶¶ 10, 11. But in his response to FNB's motion for summary judgment, Prasad raises for the first time another allegation—that Janes discriminated against him by raising his salary only 2% when Prasad was promoted to Commander. This contention found neither in the complaint nor in Prasad's EEOC charge.

The Court finds Prasad has waived any discrimination claim based on these newly raised allegations. First, as a general matter, a plaintiff may bring only discrimination claims "like or reasonably related to" those in his EEOC charge. *See, e.g., Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir.1994); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992). Second, it is inappropriate for any party to raise a new claim for relief after discovery has closed, in the midst of briefing of a potentially dispositive motion. Therefore, this Court will not address Prasad's allegation that he was the victim of race, age, or national origin discrimination because his raise was insufficient. Our inquiry is limited to Prasad's discriminatory demotion claim.

As in any discrimination case, Prasad bears the ultimate burden of proving by a preponderance of the evidence that his employment was adversely affected by his protected class status. He can meet this burden by presenting either direct or circumstantial evidence of discriminatory intent. *See Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). When, as in Prasad's case, there is no direct evidence of discrimination, the most common way to prove employment discrimination circumstantially is "by way of the burden-shifting approach first articulated in *McDonnell Douglas Corp.*" *O'Connor v. DePaul Univ.,* 123 F.3d 665, 669 (7th Cir.1997) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

To establish a prima facie case of discrimination using the *McDonnell Douglas* method, Prasad must establish that (1) he is within a protected class, (2) he was meeting the legitimate expectations of his employer, (3) he suffered some adverse employment action, and (4) he has evidence from which it can be inferred that the adverse action sprang from a "legally forbidden ground," for example, more favorable treatment of similarly situated employees without the protected characteristic. *See Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158–59 (7th Cir.1996); *see also Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445, (7th Cir.1998) (age discrimination); *Sample v. Aldi, Inc.,* 61 F.3d 544, 548 (7th Cir.1995) (race discrimination); *Iovin v. Northwestern Memorial Hosp.,* 916 F.Supp. 1395, 1405–06 (N.D.Ill.1996) (national origin discrimination).

If Prasad succeeds in making a prima facie showing of discrimination, a rebuttable presumption of discrimination arises and the burden of production shifts to FNB to articulate a legitimate, non-discriminatory reason for its action. *See Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To meet this burden, FNB must produce admissible evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407

(1993). If FNB meets this burden, the presumption of discrimination dissolves and the burden of production shifts to the Prasad to show that the proffered reason is a pretext for discrimination. *See Burdine*, 450 U.S. at 256. Although the burden of production shifts during this analysis, Prasad retains the burden of persuasion at all times. *Id.*

 Pretext can be established by showing (1) that discriminatory intent more likely than not motivated the employer; or (2) that "the employer's proffered explanation is unworthy of credence" because the defendant's explanation had no basis in fact, was not the real reason for the adverse action, or was insufficient justify any adverse action. *Id.; Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995). Practically, this means that the plaintiff must raise a genuine question about the credibility of the employer's explanation for the adverse action, or "specifically refute the facts which allegedly support the employer's claim of deficient performance." *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir.1995). We now analyze the facts of this case against these background principles.

 FNB offers two alternate grounds in support of its motion for summary judgment. First, it argues that Prasad cannot establish the second element of his prima facie case— that he was performing up to legitimate job expectations—in light of Prasad's subordinates' repeated complaints. Alternatively, FNB argues that, even if Prasad did establish a prima facie case, he has not produced evidence from which a reasonable factfinder could infer that the reasons for his demotion were a pretext for discrimination. Because we agree with this second contention,[10] summary judgment is appropriate.

 A court is free to assume that the plaintiff has established a prima facie case under *McDonnell Douglas* and to proceed directly to whether he has adduced sufficient evidence to raise a triable issue of pretext. *See EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149–50 (7th Cir.1996)

(noting that a "court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case," and "[t]o expedite the process it may be preferable to get past the prima facie case and examine the pertinent issue of whether there was discrimination in a job action"); *see also Sample v. Aldi, Inc.* 61 F.3d 544, 548 (7th Cir.1995) (declining to address whether the plaintiff established a prima facie case because employer met its burden of articulating a non-discriminatory justification). This is in line with the well-established principle that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff did so is no longer relevant." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

The Court finds that FNB has produced evidence of a non-discriminatory reason for Prasad's demotion—his inability, in the eyes of Janes, to supervise other employees effectively. Janes, the person who both promoted and demoted Prasad, had received numerous complaints about how Prasad managed the shift. Third shift employees attributed their low morale and difficulty concentrating to Prasad's poor communication and tendency to publicly humiliate his subordinates, particularly female officers. Janes then took action to address these complaints. He discussed them with Prasad several times, both one-on-one and in the presence of his sergeants, and even worked a third shift to assess the situation for himself. In Prasad's evaluation, Janes noted that Prasad needed to improve his management style—to treat employees with more diplomacy and sensitivity. When the complaints continued despite Janes' efforts to improve the situation, he met again with Prasad and his sergeants to discuss third shift conditions. Instead of accepting responsibility and pledging to improve his performance, however, Prasad tried to lay blame on his sergeants. In light of the repeated complaints about employee

---

**10.** It would violate the rule against hearsay evidence to consider these employee complaints, as related through Janes, as evidence of whether

Prasad was performing up to expectations. We would then be evaluating the veracity of the complaints instead of their effect on Janes.

morale, the consequent jeopardy to FNB's security, and Prasad's seeming unwillingness to remedy the situation, Janes concluded that the third shift needed a leadership change.

Janes' belief that Prasad was not performing adequately is a legitimate, non-discriminatory reason for Prasad's demotion. *See Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 401 (7th Cir.1992) (poor performance and failure to get along with others constituted a legitimate, nondiscriminatory reason for an employee's discharge); *Szydlowski v. Archibald Candy Corp.*, 1995 WL 68751, at *6 (N.D.Ill. Feb.16, 1995) (customer complaint held to be a legitimate, nondiscriminatory reason for discharge). Prasad must now demonstrate a genuine issue as to whether the reason is a merely a pretext for discrimination. It is not sufficient for Prasad to show that the demotion was unfair or undesirable; rather, Prasad must show that Janes did not honestly believe the reasons he gave for demoting Prasad. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 891 (7th Cir.1997); *see also Anderson*, 965 F.2d at 402 (as long as the defendant honestly believes that the employee is not meeting legitimate expectations, termination is justified).

Prasad first attempts to establish pretext by attacking the evidentiary quality of FNB's justifications. He claims that Janes' testimony about what others told him is insufficient, by itself, to justify Prasad's demotion. Prasad points out that neither Janes nor the complaining employees memorialized their complaints, and that none of Prasad's subordinates ever filed a written grievance against him. Prasad also emphasizes that Janes' testimony is uncorroborated, questioning FNB's failure to secure affidavits from the complaining employees. Second, Prasad questions the veracity of FNB's stated reasons for demoting him. He contends that they are belied by his "accomplished" rating and by Janes' favorable comments about some aspects of Prasad's performance.

■ Prasad's initial contention misses the point. Prasad is obligated to refute FNB's reasons with specific facts, *see, e.g., Plair v. E .J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir.1997); *Mills v. First Federal Savings & Loan Ass'n*, 83 F.3d 833, 846 (7th Cir.1996), not with attacks on the weight of evidence that the Court has deemed admissible. That complaints were oral rather than written—for whatever reason—is not evidence that Janes lied about receiving them. *See Tonella v. Environmental Sys. Design, Inc.*, 1997 WL 112837, at *7 (N.D.Ill. Mar.10, 1997) (it is irrelevant, for purposes of determining pretext, that supervisor never received written complaints about plaintiff). At best, Prasad's assertions attack only the wisdom of Janes' reassignment decision, not its honesty. Courts have consistently refused to review personnel decisions for fairness. *Anderson*, 965 F.2d at 403–04 ("Neither the jury nor this Court is empowered to act as a 'super-personnel department' and decide if [a] firing was unwise or unjustified."). In short, Prasad offers no specific facts from which we can infer that Janes was lying about why he demoted Prasad. Consequently, Prasad has not shown pretext through his first contention.

■ Prasad also fails to demonstrate pretext with his "accomplished" rating and positive evaluation in some areas. It is well established that evidence of generally adequate performance does not rebut proof of poor performance in a particular area. Instead, the plaintiff must show adequate performance in the specific area that the employer claims is deficient. *See Anderson*, 965 F.2d at 403 n. 2; *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414 (7th Cir.1984) (satisfactory performance reviews are not evidence that specific reasons for adverse action are pretextual); *see also Mills*, 83 F.3d at 846 ("The fact that an employee does some things well does not mean that any reason given for [his] firing is a pretext for discrimination.") (internal quotations and citations omitted). Prasad has no evidence that counters the reports of his insensitive and undiplomatic behavior; indeed, Janes' written evaluation demonstrates the contrary. Because Prasad has not produced evidence from which a reasonable jury could infer pretext, his claims cannot withstand summary judgment.

■ Prasad's discrimination claims fail for an additional reason—the same person

promoted and demoted him. "[I]n cases where the hirer and firer are same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991). The Seventh Circuit has adopted this principle. *EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 152 (7th Cir.1996) (strong inference of no race discrimination where plaintiff was hired and fired by the same person within ten months); *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1147 (7th Cir.1994) (analogous inference of no age discrimination where time span was two years); *see also Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 399 (7th Cir .1997) (reaffirming the Seventh Circuit's adherence to this principle), *petition for cert. filed,* 66 U.S.L.W. 3532 (Feb. 2, 1998). The "hirer-firer" inference is equally applicable in the demotion context; in both situations, the adverse decisionmaker is the person who treated the plaintiff favorably a short time earlier. The nondiscrimination inference follows the rationale that the person who hired (or promoted) the employee would not suddenly develop an aversion to his or her protected characteristic(s). *See Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992) (explaining this rationale in the age discrimination context).

Prasad's case fits this pattern. Janes promoted Prasad on July 5, 1993, then demoted him less than sixteen months later. We find it incredible that in a little over a year Janes would abruptly develop antipathy toward Prasad because of his national origin, race, or age. *See id.*

Prasad has failed to call into question the veracity of Janes' reasons for his reassignment. In addition, the facts support a strong inference of nondiscrimination. Because Prasad has not produced evidence from which a factfinder could infer intentional discrimination, summary judgment is granted on all counts.

## CONCLUSION

It may be that the First National Bank of Chicago should have worked more with Pra-sad to help him become a better supervisor. Surely, such humane treatment should be given to any employee, especially a veteran of twenty years. However, no current federal law requires humane, decent treatment. Since we have concluded that no reasonable jury could find that Prasad was intentionally discriminated against because of his national origin, race, or age, we must grant the defendant's Motion for Summary Judgment.

Prasad's Motion to Strike is denied in its entirety. FNB's Motion to Strike is granted in part and denied in part as detailed in this opinion. The Clerk of Court is hereby instructed to enter judgment, pursuant to Fed. R.Civ.P. 58, in favor of the defendant, First National Bank of Chicago, and against the plaintiff, Durgaprasad Vallabhapurapu.